37 N.J. Super. 558 (1955)
117 A.2d 637
ARTHUR F. HARE, A MINOR, BY HIS FATHER AND GUARDIAN AD LITEM, ARTHUR HARE, AND ARTHUR HARE, IN HIS OWN RIGHT, PLAINTIFFS-APPELLANTS,
v.
JEAN PENNELL AND BOARD OF EDUCATION OF THE TOWNSHIP OF PENNSAUKEN, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1955.
Decided October 28, 1955.
*561 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Horace G. Brown argued the cause for appellants (Messrs. Brown, Connery, Kulp & Wille, attorneys).
Mr. Sidney P. McCord, Jr., argued the cause for respondents (Messrs. Starr, Summerill & Davis, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This action arises from an injury suffered by plaintiff infant on March 24, 1953 in the pre-primer class of the Delair Public School of Pennsauken Township when a classmate struck him in the left eye with a pair of scissors. Defendant Jean Pennell was the teacher in charge of the class. The infant, by his father and guardian ad litem Arthur Hare, and the father in his own right, sued the Board of Education of the Township of Pennsauken and Miss Pennell, jointly, severally and in the alternative.
The complaint was in eight counts. The first and fourth alleged active wrongdoing by defendant board of education; the second and fifth were based on the negligence of the teacher, and the third and sixth sought judgment against both the board and teacher, jointly. The infant plaintiff sought compensatory damages for his eye injury, and the father damages for medical expenses, past and future, and loss of services. In counts seven and eight plaintiffs sought recovery against the board of education by virtue of L. 1938, c. 311 (N.J.S.A. 18:5-50.4), which requires boards of education to save harmless teachers and certain other employees from financial loss arising out of any claim, demand, *562 suit or judgment by reason of alleged negligence or other act resulting in accidental bodily injury to any person within or without a school building, provided such teacher or employee was at the time of the accident or injury acting in the discharge of his duties within the scope of his employment.
It may be noted that Arthur Hare, the father, was not appointed guardian ad litem for his son until the second day of the trial. This should have been done at the very start of the suit. R.R. 4:30-2.
The defendant board of education moved for summary judgment in its favor. The motion was argued at the pretrial conference; however, the pretrial order makes no mention of it. On that date counsel for plaintiffs consented to the dismissal of the counts of the complaint alleging active wrongdoing against the defendant board. After hearing argument the trial court dismissed these counts without prejudice, and further ordered that the seventh and eighth counts alleging the right of indemnification be stricken from the complaint. However, no formal order to this effect was signed by the trial judge until March 31, 1955, after this appeal had been taken. In accordance with R.R. 1:2-8(h), counsel for plaintiffs wrote the trial judge informing him of their intention to appeal from his dismissal of the board of education, so that he could file a written statement of his reasons, if he so desired. The trial judge took no action in this regard.
The trial resulted in a verdict of no cause for action, rendered by an 11-member jury because of the illness of one of the jurors at the time the court sent the case to the jury. Plaintiffs appeal from the final judgment entered on the verdict in favor of defendant teacher, and also appeal from the order dismissing the complaint against defendant board. We shall first consider the latter aspect of the appeal.
L. 1938, c. 311 (N.J.S.A. 18:5-50.4) was copied from section 569-a of the New York Education Law of 1910 (now section 3023; 16 McKinney's Consolidated Laws of *563 New York, c. 16, Education Law, Part 2, section 3023). It has been held that the New York statute does not create a new cause of action against a board of education in favor of an injured person. Massimilian v. Board of Education, etc., Niagara Falls, 261 App. Div. 428, 25 N.Y.S.2d 978 (App. Div. 1941). Our courts have also held that our statute was not intended to give a new right of action to an injured party against a school board. Tripus v. Peterson, 11 N.J. Super. 282 (Cty. Ct. 1950); cf. Thompson v. Board of Education, City of Millville, 20 N.J. Super. 419 (App. Div. 1952), affirmed 11 N.J. 207 (1953), where the court considered R.S. 18:5-30 granting school districts immunity from liability for personal injuries resulting from the use of any public grounds, buildings or structures, and pointed out that this act and N.J.S.A. 18:5-50.4 are to be read together and given effect, each within its own sphere.
Plaintiffs' contention that R.R. 4:31-2, relating to joinder of remedies, and R.R. 4:14-1, dealing with third-party practice, permits joinder of the school board as an original defendant, is without merit. R.R. 4:31-2 obviously refers to multiple remedies available to a particular plaintiff, and permits the joinder of claims to encourage adjudication of an entire controversy in a single action. That rule never contemplated that a plaintiff might assert in a single cause of action not only his own claims but the claims of others as well. The benefits of the "save harmless" statute, N.J.S.A. 18:5-50.4, are reserved to teachers and members of the supervisory and administrative staffs of boards of education. Adequate provision is made for the assertion of claims by such individuals against boards of education under the rules governing third-party practice, R.R. 4:14-1 et seq. However, the filing of a third-party complaint is a permissive matter under the language of the rule. There is nothing in the rule or in our decisions to the effect that a defendant may be forced to file such a complaint, or that the plaintiff in the original proceeding may, in effect, file it for the defendant by stating a claim such as has been dismissed in the instant matter.
*564 The order dismissing the two counts grounded in the "save harmless" statute was clearly correct.
Plaintiffs charge error by the trial court in disqualifying infant witnesses brought forward to testify on their behalf. There were five such witnesses in addition to the infant plaintiff himself, whose ages ranged from about 7 1/2 to 8 1/2 years at the time of trial, and who were almost six or over six years old at the time of the accident. They were classmates of the infant plaintiff and, it would appear, witnesses to the occurrence. In fact, one of them, Cheryl Taylor is supposed to have struck plaintiff in the eye. The trial court refused to allow any of them to testify, and this on the basis of an extremely limited inquiry on voir dire. For example, the court asked Gail Benzenhafer whether she liked school, how old she was, and when she became eight. The trial court then said, "Well, Gail is a very cute little girl, but she is too young, entirely, after twenty-two months to tell us the story of what happened, and I won't let her testify." When asked to state his reasons for the record, he said, "She is entirely too young, too many things can happen over a period of twenty-two or twenty-three months with a little girl like this." When counsel for plaintiffs asked permission to question the child in order to qualify her, the court cut him off.
The mother of the second child, Cheryl Taylor, testified she would shortly be nine-years-old. The court at once said. "I am afraid Cheryl is too young to tell us anything at this time." Counsel then asked the girl if she knew what happened to little girls who don't tell the truth, to which the reply was, "God punishes them." Cheryl said she would tell the truth as to what happened to plaintiff on March 24, 1953. The court refused to allow her to testify, stating: "No, too many things have gone over the dam since then."
Timothy Gallen, aged seven and one-half, Frances Seufert, over eight years old, Elwood Denz, just short of his eighth birthday, and plaintiff infant himself, over seven and one-half years old, were not permitted to testify despite the fact that they stated they knew what it meant to tell the *565 truth and the punishment for telling a lie. In each case the court ruled that the proffered witness was "too young." It appears the court was not interested in the personal capacity of each child. In every case the voir dire was extremely short  a half-dozen questions or even less. Where questions were permitted to be directed to the children, the answers showed no signs of defective memory or moral incapacity.
The law fixes no precise age within which children are absolutely excluded from giving evidence. State v. Tolla, 72 N.J.L. 515, 522 (E. & A. 1905) (six-year-old boy permitted to testify), citing Wheeler v. United States, 159 U.S. 523, 16 S.Ct. 93, 40 L.Ed. 244 (1895), where the court allowed a five-year-old boy to testify. Children under 14 years of age are admissible as witnesses if they are adjudged to possess mental capacity and moral responsibility. The adjudication is to be made upon a preliminary examination by the trial court to which they are offered as competent witnesses. State v. Labriola, 75 N.J.L. 483, 484-485 (E. & A. 1907) (nine-year-old infant permitted to testify); Carlotz v. Gavin, 133 N.J.L. 61 (E. & A. 1945); State v. Mac Lean, 135 N.J.L. 491, 494 (Sup. Ct. 1947). As Wigmore observes, "no rule defines any particular age as conclusive of incapacity; in each case the capacity of the particular child is to be investigated." 2 Wigmore on Evidence (3rd ed. 1940), § 505, p. 595; and see § 507, notes 1 and 2, pp. 597-600, for a collection of cases from other jurisdictions where infants of very tender years were allowed to testify.
The adjudication of the trial court in passing upon the mental capacity and moral responsibility of an infant who is offered as a witness will not be set aside unless it is plainly shown to have been made without any evidence to support it. State v. Labriola, supra (75 N.J.L., at page 485). The trial judge here disqualified the infant witnesses on the sole ground that they were too young, without making any real investigation into the mental capacity or moral responsibility of each child. His judgment as to their respective *566 qualifications was based upon little more than their age and appearance. His action was arbitrary, and his exclusion of their testimony prejudicial to plaintiffs' case because the children were apparently the only persons in a position to tell the jury about the accident itself.
We have not overlooked what the trial judge said in the course of his charge to the jury regarding his exclusion of the child witnesses. His remarks may be considered as throwing further light on the thought process underlying his rulings. He said he would not let the children testify because (1) "they are entirely too young," (2) "they get impressions, anyone could talk to them, put ideas in their heads, and they have all been talked to, they have all for the twenty-three months, twenty-two months this case has been pending," and (3) "they have run over this thing in their minds and gone over it." There is nothing in the record to give support to the court's observations that the children had all been talked to and that they had many times reviewed in their minds the facts of the occurrence in the months intervening between the injury and the trial. We cannot accept the court's flat assumption that the children would be untrustworthy on the witness stand, certainly not without a far deeper probing of their mental capacity and moral responsibility than was afforded them on voir dire.
There is another reason why we must reverse the judgment in favor of defendant Pennell. We have considered, as we must, the charge in its entirety, and those portions to which objection was made in the context of the entire charge. Vadurro v. Yellow Cab Co. of Camden, 6 N.J. 102, 107 (1950).
A trial judge has the undoubted right to make such comments upon the testimony as he thinks necessary or proper for the direction of the jury. He may even intimate his opinion as to the weight of the evidence whenever he thinks it is required or necessary for the promotion of justice, so long as he leaves it to the jury to determine the facts and draw their own conclusions. Foley v. Loughran, *567 60 N.J.L. 464, 477 (E. & A. 1897). The right to comment on the evidence and intimate an opinion is not without its qualifications. It may be exercised provided the purpose is to assist and not control the jury's findings.
"* * * In commenting upon testimony a trial judge may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it. His privilege of comment in order to give appropriate assistance to the jury is too important to be left without safeguards against abuses." Quercia v. United States, 289 U.S. 466, 470, 53 S.Ct. 698, 77 L.Ed. 1321, 1325 (1933).
We need refer to only two elements in the charge which we consider prejudicial error.
In the course of its charge the court said:
"* * * Little Cheryl, of course he can sue little Cheryl, he could sue little Cheryl's mother and father, he could sue anybody. You can always bring a suit; it doesn't cost much to bring suits. Anyone can sue anybody, and that person has to come in and defend. You can make up a cause of action very easily, then it becomes a question either for the Court or for the jury to decide.
This case is very close as to whether or not I should let it go to you, at all, whether there is any evidence here of negligence on the part of Mrs. Pennell; there is no direct evidence, but we have to take inferences; * * *."
The comment goes far  perhaps too far  for it clearly posed both a doubt as to whether the action had been brought in good faith and whether there was any such evidence of negligence on the teacher's part as to warrant giving the case to the jury. But when we consider this statement by the court in connection with the one which follows and which, in effect, held over the heads of the jury a veiled threat to overrule its verdict, we are of the opinion that the trial judge exceeded his right of comment. He said:
"* * * I am going to be the thirteenth juror in this case, and I don't know what I will do with it, regardless of what you ladies and gentlemen do; but we will cross that bridge when we come to it."
*568 This reemphasis of the court's impressions of the evidence, on top of his implied reflection upon plaintiffs' good faith, tended to exert a prejudicial influence. There are other parts of the charge which reenforce this conclusion: the court's reference at three different places in the charge to the possibility that this was an unavoidable accident, and its reference to the fact that the infant plaintiff had had another accident on a prior occasion which could have resulted in serious injury to his other eye. Indeed, the last such reference was coupled with a comment that "If it was a pure accident, then, of course, Mrs. Pennell was not guilty of any negligence, and the verdict would be no cause of action." This was error. The injury might have been an accident contributed to by defendant's default in supervision of the children. That was the gravamen of the complaint.
The other prejudicial element in the charge was the trial judge's discussion of the reasons why he would not permit the children to take the witness stand. There was no occasion whatsoever to discuss this subject with the jury; the judge having made his rulings in the course of the trial, should not have mentioned the matter at all in his charge. However, he not only explained in detail why he had disqualified the children, but he went on to tell the jury his concept, without any evidence whatsoever to support it since he had excluded the child as a witness, of what the infant plaintiff probably told his teacher directly after the accident. He derided the idea that a child of tender years would ever say to anybody that he had been hurt with a pair of sharp-pointed scissors. At this same place in the charge the judge also said that the injury "could have been made by a pencil." This was pure speculation, unsupported by any evidence whatsoever. The only evidence in the case bearing on the matter pointed to the conclusion that the injury was inflicted with a sharp-pointed scissors. An instruction that has no basis in the evidence is ordinarily unsupportable as tending to mislead the jury. Guzzi v. Jersey Central Power & Light Co., 12 N.J. 251, 260 (1953).
*569 Counsel properly and promptly excepted to those portions of the charge on which we have commented. We deem the errors so significant as to warrant reversal.
The order dismissing the complaint against defendant board of education is affirmed. The judgment of no cause of action in favor of defendant Pennell is reversed and the case remanded for a new trial as against her.