STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
RITA CORBO, DEFENDANT-APPELLANT.

Argued April 5, 1960—Decided May 9, 1960.

*Mr. Andrew Mainardi, Jr.,* argued the cause for appellant (*Mr. Andrew Mainardi* and *Mr. Lawrence Diamond,* attorneys; *Mr. Andrew Mainardi, Jr.* and *Mr. Howard Stern,* of counsel; *Mr. Andrew Mainardi, Jr.,* on the brief).

*Mr. Edward J. Wolak,* Legal Assistant to Prosecutor, argued the cause for respondent (*Mr. John G. Thevos,* Passaic County Prosecutor, attorney; *Mr. Edward J. Wolak,* of counsel).

The opinion was delivered

PER CURIAM. Defendant and her husband were indicted for murder. The trial court directed his acquittal. She was found guilty of manslaughter and sentenced to a term of nine to ten years.

We need consider but one reason urged for reversal. To demonstrate its significance, the setting should be described.

The deceased Ellen Graham, three years of age, was one of five Graham children entrusted by the State Board of Child Welfare to the defendants for care with compensation. The State contended the child died of a beating administered with intent to kill. The offense, if true, is manifestly detestable. The age of the infant, her placement in a foster home ostensibly to improve her lot, are themselves inciting circumstances. There was evidence the infant had been maltreated, her body bearing numerous bruises revealed by vivid pictures of her remains. Additionally, the pretrial publicity exceeded all decent bounds and interfered so palpably with the right to a fair trial that the event was postponed for some four months to protect defendant from prejudicial statements of alleged facts and rampant expressions of outrage. Despite the delay, jurors on *voir dire* re-

called the case although they gave sincere assurance of their capacity to be impartial.

The State's thesis was that the child died of a single blow to the head inflicted with a wooden paddle. It conceded the many bruises to which we referred above were unrelated to the death. Defendant admitted she inflicted some of the bruises in disciplining the child, but she was not on trial for atrocious assault and battery. Rather the charge was murder. Two factual issues sharply appeared and were crucial. The first was whether defendant struck the head of the child. The second was whether multiple subpial hemorrhages to which the State attributed death were in fact the result of the alleged blow.

The circumstances we have outlined were likely to inflame and to distract the jurors from the precise issues. It was therefore particularly incumbent upon the trial court to keep the proceedings on an even keel and to refrain from trespassing upon the fact-finding role of the jury. We are constrained to conclude that unwittingly the trial court did improperly intrude into that area.

The vitiating event occurred during an examination into the competency to testify of Albert Graham, age eight, a brother of the deceased. Upon his testimony hung the State's claim that defendant struck the head of the deceased. The boy testified defendant did so strike the child but there was evidence that before trial he denied that she had. Thus the boy's truthfulness was ultimately a vital issue beyond the preliminary question of his competency to testify at all. During the preliminary inquiry, the following occurred in the presence of the jury:

"The Court: I do not know of any child who will not tell the truth who has been indoctrinated by his superiors and especially the Sisters on the issue of sin, that it is wrong to commit a sin, that if you commit a sin you will be punished, and that he does not wish to be punished. He will not tell a lie because he will be punished. Furthermore, it would also be a sin.

Mr. Diamond: I understand that, sir, and I am aware of it fully. But the point I make is this—

The Court: The weight, Counselor, that the child's testimony shall receive is for the jury to evaluate its weight. Its competency is for the Court.

Mr. Diamond: Yes, your Honor, but the point I make is this: That a child may have been taught the very things which your Honor has said, and undoubtedly this child was.

The Court: I am frank to admit that I was taught in parochial schools by Sisters what sin is."

■■ The trial court of course could consider the boy's religious education in determining his competency to testify. But to say that any child so trained will not lie is beyond the province and knowledge of a court. That question belonged to the jury to be determined upon weighing the proof. Yet the trial court expressed the view that "I do not know of any child who will not tell the truth who has been indoctrinated by his superiors and especially the Sisters on the issue of sin," to which he added "I am frank to admit that I was taught in parochial schools by Sisters what sin is." We have no way of assessing the impact upon the jury of the judge's view that a boy so indoctrinated will necessarily tell the truth. The statement had the capacity to tip the scale against defendant, especially in the distracting circumstances we have mentioned. It was more than a mere comment upon the evidence. It was a broad endorsement of the unimpeachable honesty of a witness before he had even told his story. Jurors quite naturally are swayed by a judge's views, for the judge is a figure of objectivity and impartiality. We are satisfied the statement was erroneous and legally prejudicial and was not overcome by the general instructions at the close of the case outlining the jurors' exclusive role as triers of the facts.

The judgment is accordingly reversed and a new trial ordered.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.