153 N.J. Super. 190 (1976)
379 A.2d 454
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WALTER GROSSMICK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 10, 1976.
Decided July 13, 1976.
*191 Before Judges CARTON, CRAHAY and HANDLER.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mr. Ronald Nelinson, designated counsel, on the brief).
*192 Mr. William F. Hyland, Attorney General of New Jersey attorney for respondent (Mr. Robert A. Rubenfeld, Deputy Attorney General of counsel and on the brief).
PER CURIAM.
Defendant Walter Grossmick appeals from his convictions for threatening to kill (N.J.S.A. 2A:113-8) and assault with intent to rape (N.J.S.A. 2A:90-2). He had been acquitted of the charge of rape (N.J.S.A. 2A:138-1), and his conviction for lewdness (N.J.S.A. 2A:115-1) was set aside upon a motion for judgment of acquittal.
It is argued that the trial judge committed reversible error in denying defendant's request for a continuance based upon the disclosure to defense of the existence of a fresh complaint witness on the day before trial. We disagree.
The judge denied that motion upon the assurance that defense counsel would have ample time in which to investigate and speak with the witness. Defendant had a reasonable time in which to investigate the witness' reputation for truth and veracity in the community. She did not take the witness stand until the middle of the third day of trial. Defense counsel did not further indicate that he was still dissatisfied with his investigation of this witness.
Defendant also contends that the trial judge erred in ruling that six-year-old Donna Grossmick was incompetent to testify on behalf of the defense, although she was an alleged eyewitness to the incident. Where an infant is offered as a witness, the general purpose of the inquiry is to determine the capacity of the child to give evidence, i.e., whether there is sufficient discernment and comprehension to invest the testimony with probative worth. State v. Walton, 72 N.J. Super. 527, 532 (Law Div. 1962). Capacity in this sense involves the ability to understand questions and to frame and express intelligent answers as well as a sense of moral responsibility, a consciousness of the duty to speak the truth. Id.
*193 Donna Grossmick was four years old at the time of the sexual assault. At the time of trial she was six. The judge found Donna incompetent to testify on the ground that she was not "capable of expressing herself" or understanding the questions that were going to be propounded to her. The judge felt that the infant was especially immature  he had the impression that she was a "little baby girl" who lacked the requisite mental capacity (i.e., recollection and communication). We are therefore satisfied that the trial judge presented ample support for his decision that the child was not a competent witness.
A further argument is made that defendant was unduly prejudiced by a reference that he had been placed on "psychiatric probation" in connection with a prior conviction. We find no merit in this contention, especially in light of the judge's instruction to the jury. We similarly find no merit to the additional contention that the jury improperly and unfairly was informed of a prior municipal court conviction. Although defendant was asked on cross-examination as to convictions of any other crimes, there is no basis for the assertion that the jury was made aware of the municipal court conviction.
Defendant asserts that he is entitled to a reversal on the grounds of cumulative error and that the verdicts were against the weight of the evidence. The asserted errors did not singly or together engender prejudice of a magnitude to justify reversal. And, there was, upon our review of the record, ample evidence to establish beyond a reasonable doubt that defendant had threatened to kill his victim by intentionally conveying to her by his words menace and fear. There is similar evidential support of the assault upon the girl with the intent to inflict forceful corporal injury and to have intercourse with her forcibly and against her will.
Affirmed.
CRAHAY, J.A.D. (dissenting).
I am not content from my review of the record that defendant had a full and fair *194 trial in this case. While the record contained sufficient proof to support the jury's verdict, the evidence cannot in my reading of it be labeled strong and convincing. The case was at best close. The record need not be fully detailed but some recitation of the facts appears warranted.
The complaining witness against defendant was a 16-year-old girl, E.K. While I recognize that the determination of the credibility and weight to be assigned to it was for the jury, I must note that I found it to be weak and contradictory in many areas.
E.K. testified essentially that for some time she had been a babysitter for defendant's family and that on the day of the alleged occurrence she accompanied defendant and others to see a pony which he had recently purchased for his children. After doing so, the party went to a bar and several hours later, at the instance of defendant's daughter Donna, age four, they returned to the stable. The second visitation was made by a party consisting of Donna, E.K. and an "older person"  Pappy Shelton. Defendant's wife remained at the bar. (Between the two stable visits E.K. may have had between one and five drinks of vodka. She claimed not to be "high at all".)
At the stable E.K. tried riding the pony but fell off, scraping her hand. The pony was put in the stable and Pappy Shelton left the scene.
According to E.K., defendant entered the stable and committed the acts which generated the indictment. As a result of the affray she claimed that her arms and hands were injured and bloodied. During that incident E.K. testified that Donna was in the stable and "She was like in front of us behind the fence like thing. Behind the fence with the horse." When asked if there were doors or openings in the fence, E.K. responded  "I don't remember if there was a door because Donna was crawling in and out of part of the broken fence."
E.K. testified that during the assault upon her Donna "came back a few times and he [defendant] told her to get *195 out. Go play with the pony." Donna came into the area two or three times, during which E.K. was crying. She claimed not to have said anything to Donna and did not recall if the latter said anything.
E.K. testified that after the incident the three returned to the bar where, on defendant's advice threatening her with death, she told defendant's wife that she had fallen off the pony. She claimed that her arms were bleeding and that she washed them off in the bathroom of the tavern.
Thereafter, according to E.K., defendant drove her home in the company of his wife and Donna, stopping on the way at a MacDonald's where he bought her a hamburger. During the ride E.K. claimed that Donna attempted to say that E.K. had been crying, but defendant told her to be quiet.
At her home E.K. repeated to her mother that she had fallen off the pony. She telephoned her best friend  Kathy Rusinko  and told her she had been raped. (She testified she did not tell others because of defendant's threats.) She stayed with Kathy that night and at the latter's urging told her mother of the affair the next day, which led to the police investigation and complaint against defendant. E.K. was examined by Dr. Bradford Hinkle later that day On behalf of the State he testified that 
He examined her pubic area and there were "no bruises or contusions, abrasions, anything present." Tests were negative for spermatozoa and he was unable to say that E.K. had been raped. E.K. complained of injuries to her right wrist and hand and her left wrist. The doctor found no objective evidence of any injury to these parts. On her complaint of soreness on the inner aspect of her thighs, he felt that it was muscular in origin and could be from horseback riding. Another State's witness  O'Rourke, the officer in charge of the investigation, similarly testified that when he interviewed E.K. on the day following the affair, he did not recall observing bruises, scrapes or cuts. Nor did E.K. mention Kathy Rusinko during that interview.
*196 E.K. testified that she mentioned Kathy Rusinko's role in the matter to an assistant prosecutor and a detective "A few weeks ago. I don't remember. Maybe a couple months ago. It's pretty  a while ago." Through some oversight Rusinko's name was not given to defense counsel until the day before trial. His motions (1) for a continuance and later (2) for a mistrial were denied.
Included in defendant's case was his testimony denying any criminal activity toward E.K. and that at no time at the stable was Donna alone with the pony. Additionally, he claimed that the complaining witness' charges against him were motivated by revenge.
Within two nights before the incident defendant and E.K. had quarreled, he and his wife returning to their home earlier than planned from a night out. E.K. was discovered with three boys and "Beer cans all over the living room and her sitting on the couch smoking a cigarette with the boyfriend with his arm around her" and her blouse in some state of disarray.
Defendant's wife had earlier cautioned E.K. about such conduct and he ordered her out of the house, whereupon "She was mad. They slammed the door, that was it."
Defendant's wife testified in his behalf, and in addition to rebutting E.K.'s testimony as to the events of the day in question, corroborated defendant's version as to the babysitting incident a night or two before.
As to the latter event, Mrs. Grossmick testified that E.K. arrived at their home around 5:30 P.M. The Grossmicks had planned to be out until about midnight but returned at 6:45 when another member of the party became ill. She recounted that
I walked in the house while my husband had parked our car and I seen three boys in the house. Evelyn sitting up on the couch. Her feet propped up. A couple buttons opened on her blouse. The two boys were sitting beside her. One boy in the chair. They were drinking beer. I had a bottle of whiskey of the table. She had her feet propped up, her shoes off. The boys had their arm around her *197 and I walked in, I automatically   I didn't see the children and I said where are the children. She said in bed. * * *
Defendant discharged E.K., who was embarrassed and left "in a huff."
E.K., on her cross-examination, recounted that incident thus 
She had been a regular babysitter for the Grossmicks, working everyday in the daytime (she was no longer attending school) and sometimes at night. A night or two before the alleged assault upon her E.K. testified that
This guy called me up and asked me if he could see me and I told him, you know, stop in for a little while. He came over and I think he had two friends with him but I told him he couldn't stay long. You know, just for a little while to stop by and talk. He came in and he was talking to me and they came home  
She conceded that beer was being drunk and that a "couple of liquor bottles were out". She denied that the Grossmicks were upset, that Mr. Grossmick had disallowed her having "boys over," or that she was fired. Rather, she claimed the boys left at her direction, she recollecting that she had remained a little while thereafter. She also disclaimed, contrary to Mrs. Grossmick, that on the day of the alleged crimes the two had disputes over her pay.
Defendant offered his daughter Donna, as his witness. In the presence of the jury, but prior to being sworn, she stated under questioning by defense counsel that she was six years old and attended school and church. When asked if she knew what it meant to tell the truth she responded that it meant "Don't lie and if you lie * * * You be punished" by "God and Jesus." She would not lie if told to either by her mother or father. She would not lie if asked questions by either counsel or the court, and acknowledged that she understood that it was "very important that [she] tell the truth." After some further questioning by the trial judge Donna was excused. The judge then stated to the jury:
*198 * * * the purpose of this examination of Donna in your presence is so that you will know what has transpired or what does transpire and we've questioned her before administering an oath to her because it's my responsibility to determine whether or not she is competent to testify and if I determine that she were competent to testify you would have the benefit of this preliminary examination for such purposes as it may serve in permitting you to evaluate the credibility of her testimony.
Now, Mr. Klein, it's my opinion that the girl's too young. She's too tender of age. I can't bring myself to feel that she can testify. I don't know whether she can grasp the significance of an oath. I think she's a lovely little girl. But she appears to be just what she is, a nice little girl who's going to kindergarten. I never having had any little girls, I don't know. Having been blessed only with one boy and unfortunately that's been quite a while ago so my memory's not too good. But I just can't bring myself to feel she is qualified to be sworn and testify in a proceeding such as this. * * *
Defense counsel pressed his offer outside the jury's presence, and while there was no formal offer of the proof to be elicited from Donna, at one point in this colloquy with the trial judge he stated:
She [Donna] was a talkative girl. She does remember as she refers to it the time [E.K.] came to see her pony. [Emphasis supplied]
Counsel argued that Donna's testimony would be "invaluable" and that with "cautionary instructions" the jury "would be well advised to hear it."
The trial judge persisted in his refusal to have Donna testify and, it appears to me, on the basis of her age, from these additional remarks during the argument:
* * * She's only six years old. She just turned six years. I'm no authority on children, but I mean we're going to ask if she remembers something that happened a year and three months ago. I just can't feel that she's capable of that  I don't know that she's capable of expressing herself. She's not to tell the jury, she's too tender of age.

* * * * * * * *
* * * the minute the girl walked in the room I observed her she appears to be a little baby girl. Now, I'm not authority on children, she didn't appear to be mature or six to me.
Now, it's important the girl just turned six. You know she's five plus. *199 Now, the children of these tender ages indicate they have particular aptitudes or some particular   of course, most of them are older than six years old. Cases deal with ten year old children, eight year old children and so forth. She impressed me like a little baby girl when she came in here. A lovely little girl but she's a baby girl. I don't know, I'm not a child authority. I don't know what a six year old child can remember a year ago. Maybe she remembers well. I made my determination. I don't think she's capable of understanding the question that's going to be propounded to her. I don't think she's capable of expressing herself and I think that it would be horrible trauma and as indispensable as her testimony may be, it's on the record.
She allegedly was supposed to be on the premises when this happened, running in and out of the area. I don't think she's capable of testifying and that's it. [Emphasis supplied]
It is clear that the basis for holding that Donna was incapacitated from testifying was her age (and perhaps some trauma to her in being a witness). This was error, and in view of the close and tenuous nature of the case, of a quality warranting reversal. If Donna had testified  and presumably it would have been in defendant's favor  and if that testimony had been accorded credibility and weight by the jury, a different result very well might have ensued. Recognizing that in the first instance the trial judge should make the determination of competency, there must be some record support for finding a disability beyond, as here, a finding of lack of age. There was no attempt to determine if Donna had a recollection of the events in question and if her recounting of them was sufficiently trustworthy to be received into evidence. Donna should have been examined in the first instance not only as to her understanding of her taking an oath, but on her observations and recollection of the events involved and her ability to communicate them. In establishing the truth or falsity of a fact in issue competency and admissibility should be the rule, their converse the exception. State v. Briley, 53 N.J. 498 (1969). Except in situations not here involved, "all relevant evidence is admissible" and "every person is qualified to be a witness," Evid. R. 7(a) and (f), subject, of course, to an Evid. R. 8 *200 hearing ("Preliminary Inquiry by Judge") on the question of a witness' qualifications.
We are directed to no principle which defines any age as bespeaking an incapacity to be a witness.
McCormack instructs thus:
There is no rule which excludes * * * a child of any specified age, from testifying * * * in each case the traditional test is whether the witness has intelligence enough to make it worthwhile to hear him at all and whether he feels a duty to tell the truth. Is his capacity to observe, remember, and recount, such that he can probably bring added knowledge of the facts? * * *
The liberalization that has been accomplished in the practice has come by liberalization in judicial custom, as the statutes have seldom purported to change the common law standard. Disqualification for * * * immaturity would doubtless have long since been abandoned, except for the presence of the jury's ability to assay the words of a small child * * * Conceding the jury's deficiencies, the remedy of excluding such a witness, who may be the only person available who knows the facts, seems inept and primitive. Though the tribunal is unskilled, and the testimony difficult to weigh, it is still better to let the evidence come in for what it is worth, with cautionary instructions. [McCormack on Evidence, (2 ed. 1972), § 62 at p. 140]
See State v. Tolla, 72 N.J.L. 515, 522 (E. & A. 1905) (six-year-old boy permitted to testify), citing Wheeler v. United States, 159 U.S. 523, 16 S.Ct. 93, 40 L.Ed. 244 (1895) (five-year-old boy permitted to testify in a murder prosecution); Hare v. Pennell, 37 N.J. Super. 558, 565 (App. Div. 1955) (error to exclude testimony of five infant witnesses solely on basis of age which ranged from about 7 1/2 to 8 1/2 years at time of trial, and who were almost six or over six years old at time of cause of action).
In this case we had the witness' expression of the recognition of her duty to tell the truth, but no meaningful determination (except to note her age and immaturity) as to whether she had intelligence enough to make it worthwhile to hear her at all.
The majority states that
The judge felt that the infant was especially immature  he had the impression that she was a "little baby girl" who lacked the requisite mental capacity (i.e., recollection and communication).
*201 I cannot agree with that observation in view of the trial judge's statement that "Maybe she [Donna] remembers well" the events, and defense counsel's statement that she was "talkative," remembered the day and that her testimony would be "invaluable."
The principal question in issue here: was her "capacity to observe, remember and recount, such that [she could] probably bring added knowledge of the facts?" went unanswered. Without it, on this record, I would hold that defendant was prejudiced and denied a full and fair trial. See State v. Bicanich, 132 N.J. Super. 393 (App. Div. 1973), aff'd 66 N.J. 557 (1975). Except for this error, I would agree with the majority that the other asserted points of appeal are not "of a magnitude to justify reversal."
I dissent and would order a new trial.