159 N.J. Super. 273 (1978)
387 A.2d 1227
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHESTER ZAMORSKY, DEFENDANT-APPELLANT.
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHESTER ZAMORSKY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 29, 1977.
Decided May 3, 1978.
*277 Before Judges LORA, SEIDMAN and MILMED.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mr. Carlo Andreani, designated counsel, of counsel and on the brief).
*278 Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent (Mr. Robert A. Jacobson, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by SEIDMAN, J.A.D.
These appeals, which we have consolidated on our own motion, arise out of judgments of conviction entered after jury trials, at which different judges presided, in each of which defendant was found guilty of impairing the morals of a minor. The first involved the alleged molestation of K, a six-year-old female child on March 12, 1975 (Zamorsky I); the other, a like offense against D, another female child of similar age, on March 10, 1975 (Zamorsky II).
While numerous assignments of error are urged in each appeal, we propose to deal only with those relating to the trial judge's determination that each child was competent to testify as a witness, and to the requirement of Evid. R. 18 that "a witness before testifying shall be required to take an oath or make an affirmation or declaration to tell the truth under the penalty provided by the law." We limit ourselves to a consideration of those issues because we are convinced that in each case, in one or the other of those areas of concern, there was substantial and prejudicial error necessitating a reversal of the judgments and a remand for a new trial.
We comment, initially, on defendant's assertion that the trial judge in each case abused his discretion by conducting in the presence of the jury the preliminary hearing on the qualification of the child in question to be a witness, despite the objection of defense counsel. He contends that the jury was thereby prejudiced into believing the child's testimony to be credible. We think it may be preferable in the case of children of tender years not to hear the matter before the jury. Evid. R. 8(1) provides in pertinent part that where the issue to be determined by the judge is the qualification of a person to be a witness, he "may hear and *279 determine such matters out of the presence of the jury" (emphasis supplied). It is thus clear that whether to exclude the jury from the courtroom rests in the sound discretion of the trial judge. His action in that regard, even over objection, will not lead to a reversal unless it is shown that there was an abuse of discretion resulting in manifest wrong or injury to the defendant. State v. Huff, 14 N.J. 240, 248-249 (1954). We discern no such mistaken exercise of discretion here on the part of either trial judge.
Defendant challenges next the qualification of the children to be witnesses, maintaining that neither was capable "of understanding the duty of a witness to tell the truth." Alternatively, in the case of D, he argues that allowing her to testify "constituted a denial of due process where her testimony consisted of automatic and conditioned responses produced by the coaching and prompting of both the prosecutor's office and her mother."
We said in State v. Grossmick, 153 N.J. Super. 190 (App. Div. 1976), aff'd o.b. 75 N.J. 48 (1977), that
* * * [w]here an infant is offered as a witness, the general purpose of the inquiry is to determine the capacity of the child to give evidence, i.e., whether there is sufficient discernment and comprehension to invest the testimony with probative worth. * * * Capacity in this sense involves the ability to understand questions and to frame and express intelligent answers as well as a sense of moral responsibility, a consciousness of the duty to speak the truth. [at 192]
There is no issue here of the capacity of the children to express themselves so as to be understood by the judge and jury. Evid. R. 17(a). Rather, defendant's reliance is on that portion of the rule which declares a person disqualified to be a witness who "is incapable of understanding the duty of a witness to tell the truth." Evid. R. 17(b).
The adjudication of moral responsibility is to be made by the trial judge upon a preliminary examination. State v. Labriola, 75 N.J.L. 483, 484 (E. & A. 1907); Morrone v. Morrone, 44 N.J. Super. 305, 313 (App. Div. 1957); Hare *280 v. Pennell, 37 N.J. Super. 558, 565 (App. Div. 1955); Evid. R. 8(1). Its determination, largely a matter of discretion, will not be set aside unless plainly shown to have been made without evidence to support it. Hare v. Pennell, supra at 565; State v. Gambutti, 36 N.J. Super. 219, 223 (App. Div. 1955).
Interrogating a child offered as a witness, where the qualification of the child to testify is in issue, is a difficult task which cannot be performed in a pro forma or perfunctory manner. Since the goal is to ascertain the child's comprehension of the duty of a witness to tell the truth, it is first necessary to explore the child's conceptual awareness of truth and falsehood. The younger the child, the more searching the inquiry must be. When it has been established that the child understands the meaning of those terms, the next area of inquiry is not, as is so often the case, whether the child will tell the truth, but rather whether the child understands that it is his or her duty to tell the truth. This is the essence of moral responsibility. We perceive no need to dwell at length on how the witness' expression of that duty is to be articulated or on what it should be founded. It matters not that the recognition of the duty to speak the truth may emanate from a source other than one's religious upbringing. It should suffice if the child understands that it is wrong to tell a lie and that one must always speak the truth. If the trial judge is satisfied from his interrogation that the child is sensitive to his or her obligation to tell the truth, we will not disturb his conclusion unless it is plainly unsupported by the evidence.
In Zamorsky I the trial judge elicited from K, who was seven years old at the time of the trial, that her teachers had instructed her to tell the truth. She could not say, however, what would happen if she did not tell the truth. She said she never heard "about getting punished for it," although her mother "sometimes" spanked her for telling a lie. But at the same time she denied ever telling a lie, except "a little white lie, sometimes." She repeated a number of *281 times her "promise to tell the truth," and acknowledged, in response to the judge's inquiry, that "it would be bad to tell a lie." At the conclusion of the interrogation, the trial judge said: "I think she will try to tell us the truth. I will find her qualified."
We are not altogether satisfied that the interrogation was as thorough as it should have been. Nevertheless, there emerges from the colloquy enough of a consciousness on the part of the child of an obligation to tell the truth to support the trial judge's conclusion that she was qualified to testify.
But the trial judge then went on to explain to the jury what had transpired:
Ladies and gentlemen, we have to go through this little ceremony. We have to judge what the child [sic] to see whether the child will tell her version truthfully, just as you would with any of your children. [Emphasis supplied]
Although no objection to the explanation was voiced at the trial, and defendant has not raised the issue on appeal, we deem the matter of sufficient importance to consider it on our own motion, under our power to "`notice plain error not brought to the attention of the trial or appellate court.'" R. 2:10-2. See State v. Christener, 71 N.J. 55, 63 (1976). The potentially prejudicial effect of the explanation is evident. The purpose of the inquiry was to determine whether the child understood her duty to tell the truth, not whether she would tell the truth. The credibility to be attached to her testimony was for the jury. Yet the wording of the explanation was such that it may well have suggested to the jury that the trial judge was satisfied from his interrogation that the child would be a credible witness, otherwise he would not permit her to testify.
There is no doubt that K's testimony was crucial to the State's case. The implied indorsement of her credibility by the trial judge thus "had the capacity to tip the scale *282 against defendant." State v. Corbo, 32 N.J. 273, 276 (1960). We are of the view that the explanation was legally prejudicial and of such nature as to have been clearly capable of producing an unjust result. R. 2:10-2. It was not overcome "by the general instructions at the close of the case outlining the juror's exclusive role as triers of the facts." State v. Corbo, supra.
Since for the foregoing reasons there must be a reversal and remand for a new trial, we should comment on the trial judge's purported implementation of Evid. R. 18, which sets forth that "[a] witness before testifying shall be required to take an oath or make an affirmation or declaration to tell the truth under the penalty provided by the law."
At the close of the preliminary inquiry, after ruling that K was qualified to testify, the trial judge commented, "She is not old enough to take an oath though maybe I better ask her." He then inquired as follows:
Q. Did you ever take an oath, did you ever hear that word, take an oath? A. No.
Q. Did you ever swear that something is going to be the truth, swear to tell the truth? A. No, I never did.
Q. Did you cross your heart and hope to die, did you ever say that? A. Yes.
Q. What does that mean? A. That means that you will do it, you will tell the truth.
Q. Will you cross your heart and promise all of these people that you will tell the truth? A. Yes.
Q. Cross your heart, go ahead, cross your heart and tell the truth? A. Yes.
Q. Go ahead so they can see it. If your mommy tells you to cross your heart and tell the truth, will you do it. A. Yes.
[K's mother]: Say cross my heart, I will tell the truth.
THE WITNESS: Cross my heart, I will tell you the truth.
Defense counsel objected because "[s]he doesn't comprehend the meaning of an oath and she hasn't taken an oath." The child was nevertheless permitted to testify.
We do not understand the trial judge's statement that K was not old enough to take an oath, in view of his finding that the child was qualified as a witness, which necessarily *283 entailed the ability on her part to communicate and an understanding by her of her duty to speak the truth. The close relationship between the latter and the taking of an oath or the making of an affirmation or a declaration is such that it is difficult for us to conceive of a situation where a child may be competent to testify and yet be unable, for lack of mental or moral capacity, to swear or affirm. If the child qualifies as a witness, he or she must be sworn or affirmed, as the case may be, and the fact of childhood does not alter that requirement. State v. Gambutti, supra 36 N.J. Super. at 224.
The State concedes that no oath was given to the witness "in the form prescribed by N.J.S.A. 41:1-6." It insists, nevertheless, that "[a]n `oath' was, however, given which was as potent and meaningful, in terms of purpose, as any that could have been given to an infant witness." There was, the State maintains, substantial compliance with the oath requirement, and "[t]o reverse defendant's conviction now, based upon the court's failure to literally and mindlessly recite a litany, the meaning of which the witness was incapable of understanding, would do justice to no one."
We are for from satisfied that the child here was incapable of understanding that which is disparaged in the State's brief as "litany." The colloquy between the child and the trial judge was inconclusive in this respect. While the child may not previously have heard the words "take an oath," and it is highly unlikely that an oath had ever been administered to her, the fact is that the trial judge had already necessarily determined that she understood her duty to speak the truth. The remaining step was to obtain from her, in an acceptable manner comporting with our law and tradition, a solemn commitment that she would speak the truth. This is the substance of an oath, or of an affirmation or declaration, all of which are forms of attestation by which a witness signifies that he is bound in conscience to perform an act faithfully and truthfully, 67 C.J.S., Oaths and Affirmations, § 2 at 4.
*284 The oath has been termed "an appeal by a person to God to witness the truth of what he declares." Id. Wigmore speaks of it as "a method of reminding the witness sharply of the divine punishment somewhere in store for false swearing, and thus of putting him in a frame of mind calculated to speak only the truth as he saw it." 6 Wigmore, Evidence (Chadbourn rev. 1976), § 1816 at 382. An affirmation is an equally solemn undertaking to tell the truth, without invoking the Deity.
We do not undertake to determine whether or in what circumstances an affirmation may permissibly be interchanged for an oath in the case of a child, absent an expression of conscientious scruple against taking an oath. See N.J.S.A. 41:1-6. That issue is not before us on this appeal; it need not be resolved at this time.
We discern no justification here for the omission to swear in K in the usual manner. Her negative response to whether she had ever sworn to tell the truth was not necessarily indicative of a lack of understanding of the nature of the oath. It signified only that she had never experienced the administration of an oath. We have no reason to doubt, on the present record, that had the trial judge gone on to explain to the child the meaning of an oath and the obligation it entailed, she would have indicated her comprehension of it.
It is clear to us that once a child witness is found to be qualified to testify, that witness, like any other, is required "to take an oath or make an affirmation or declaration to tell the truth under the penalty provided by the law." Evid. R. 18. The State contends, however, that having the child here cross her heart and promise to tell the truth constituted substantial compliance with the requirement of Evid. R. 18. The argument advanced is that the form of the oath is unimportant, and that all that is required is a solemn ceremony to convey to the witness both the grave necessity of testifying truthfully and the possibility of punishment should lies be told to the court.
*285 Since the traditional forms by which an oath is to be taken or an affirmation made are designed to accomplish that very purpose, we perceive no sound reason for deviating from them by eliciting the commitment to tell the truth in some other manner, such as, in this case, by crossing one's heart. We think the practice should not be encouraged.
Our attention has not been directed to any reported case in this State on the subject of what constitutes substantial compliance with the oath requirement, and our own research has uncovered none. However, we need not pursue the matter in light of all the foregoing. Further exploration of that difficult issue and its resolution had better be left for another day.
We turn now to Zamorsky II. We discern scant merit in defendant's assertion that D's testimony "consisted of automatic and conditioned responses produced by the coaching and prompting of both the prosecutor's office and her mother." The argument presented relates essentially to the child's testimony on cross-examination following the voir dire, and not to the interrogation conducted to determine her competency as a witness. Viewed most favorably to defendant, the credibility of her testimony may have been adversely affected thereby; her qualification to be a witness was not implicated.
The further contention that the child was incapable of understanding the duty of a witness to tell the truth also lacks sufficient substance to persuade us that a reversal is required on that account. As a matter of fact, her perception of truth and falsehood was more acute than that of K. She appeared to be more aware of the difference between the two, and that lying produced punishment. Lying, she said, was "[not] telling the truth," and that was "real bad." We are confident that this child had sufficient moral responsibility to qualify as a witness.
Our concern, however, is over the failure to administer the oath to the child, which seems to have been simply a matter of oversight, and not a deliberate omission on the *286 part of the trial judge. Since no objection was voiced by defense counsel, the matter comes to us on a claim of plain error. The State concedes "[i]n all candor" that if the failure is held to be substantive error, the error must be deemed clearly capable of producing an unjust result, since the infant's testimony constituted the only direct evidence against defendant. It argues, however, that by failing to object, defendant has waived any right to do so now, and, in any event, the questioning of the infant witness as to her ability to tell the truth, in the presence of the jury, constituted substantial compliance with the oath requirement.
We reject at once the latter argument. The brief in interrogation clearly was limited to the child's qualification to be a witness. The most that was established was her understanding of the duty to tell the truth. This accorded with Evid. R. 17(b); it did not fulfill the requirement of Evid. R. 18.
As for the matter of waiver, the State has not provided any New Jersey citations to support its position that the error was waived by defendant's failure to object at trial. While cases from other jurisdictions are cited, we are not persuaded by them in view of our rule which allows us to notice plain error not brought to the attention of either the trial or the appellate court. R. 2:10-2. It is to be noted that in State v. Gambutti, supra, the failure to administer the oath to infant witnesses was held to be error even though no objection was registered by defendant at the trial and the omission was not even made a ground of appeal.
But we need not delve more deeply into the broad issue of whether and in what factual situations the failure to administer an oath to a witness or to obtain an affirmation or declaration may be waived by the absence of objection at trial. The State has acknowledged that if the error here is substantive, it would be plain error. Our law, as we have said, mandates that an oath be given or an affirmation or declaration made, before a witness can testify. None was given or made here and the trial judge erred in that respect. *287 The error was substantive, not simply a matter of procedure. D's version of the occurrence was the State's entire case against defendant. The issue of credibility was central to the jury's finding of guilt. The admission of the testimony clearly affected the outcome of the case to the prejudice of defendant.
The judgment of conviction in each case is reversed and each matter is remanded for a new trial.