(987 P.2d 1114)

No. 78,095

STATE OF KANSAS, *Appellee*, v. DARRELL D. CHAPPELL, *Appellant*.

Opinion filed July 16, 1999.

*Sal Intagliata* and *Daniel E. Monnat*, of Monnat & Spurrier, Chartered, of Wichita, for appellant.

*Alan Hughes*, assistant county attorney, *Timothy J. Chambers*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before GERNON, P.J., PADDOCK, S.J., and DONALD R. NOLAND, District Judge, assigned.

NOLAND, J.: Darrell D. Chappell appeals his jury trial convictions of aggravated criminal sodomy and aggravated indecent liberties with a child.

The trial court sentenced Chappell to a term of 91 months on the aggravated criminal sodomy conviction and 49 months for the conviction of aggravated indecent liberties with a child. The court ordered the sentences to run consecutively, for a total controlling term of 140 months.

Chappell appeals his convictions on the grounds that the trial court and prosecutor improperly vouched for the credibility of a witness and on numerous other errors.

## FACTS

In the summer of 1995, Chappell was living in Hutchinson along with his wife, Patty, and their 9-year-old son, S.C., and 7-year-old daughter, B.C. While walking to the Fourth of July parade, B.C. confided to S.C. that Chappell was touching her private parts. The children then made a plan to run away to a city park. On the evening of July 25, the children fulfilled their plan by exiting their house through a window and then rode their bikes to a park. Later that night, the children became frightened and went to their grandmother's house.

After arriving at the house, S.C. informed his grandmother and his uncle that Chappell had been touching B.C.'s private areas. The police were then called, and upon their arrival, were advised by B.C. that the touchings had occurred for approximately 2 years, with the latest incident occurring sometime in July 1995.

Around 7 a.m., Chappell and his wife discovered their children were missing. Chappell found a note in B.C.'s room that said, "[I]f you quit smoking, will come home. We ran away. We are okay. Love, [S.C.] and [B.C.]. [T]hat ain't the only t[h]ing." Patty then

called her mother and discovered that the children were at her house. Patty was then told of B.C.'s claim that Chappell had been molesting her.

During the trial, S.C. testified that the last sentence of the note referred to Chappell's touching of B.C.'s private parts. B.C. testified that her father had been touching her vagina with his fingers and mouth in her bedroom at night. B.C. stated that on one occasion, Chappell placed green aloe vera gel on his penis and then made her touch his penis. Chappell denied all allegations.

The State's first witness called at trial was B.C. As soon as B.C. was called to the stand, the trial judge sua sponte examined her in the presence of the jury regarding her ability to tell the truth. After a brief voir dire, the judge declared: "Okay. I am convinced that she is capable of telling the truth." The prosecutor then asked a few questions of B.C. and then similarly stated, "Your Honor, I am satisfied the child can certainly tell the truth. I think she has given illustrations. I am satisfied." The judge responded, "I am satisfied and you are, but [defense counsel] has the right to voir dire her, so I will allow him to do that."

Defense counsel's voir dire of B.C. included the following:

"Q. Have you ever told a lie to your mom?
"A. I can't remember if I did or not.
"Q. Have you told a lie to your dad?
"A. No.
"Q. Have you told a lie to anyone else that you can remember?
"A. (Shaking head from side to side.) I can't remember."

Shortly after this exchange, the prosecutor objected to further inquiry of B.C. by defense counsel, alleging that the voir dire was "cross-examination material." The trial judge then stopped defense counsel's voir dire by stating, "I think that this child knows what we are here for today and that *she has answered all the questions truthfully* . . . and is capable to testify here as a witness." (Emphasis added.)

It is stipulated that defense counsel did not contemporaneously object to these comments.

### Discussion

Initially, the State alleges that Chappell has failed to preserve

this issue for appellate consideration pursuant to his failure to contemporaneously object to the comments at trial. See *State v. O'Neal*, 238 Kan. 183, 188, 708 P.2d 206 (1985). Chappell concedes his failure to timely object at trial. However, he alleges that his fundamental right to a fair trial, including a jury determination of the witnesses' credibility, is at stake and, thus, this court may consider this issue.

Although an issue may not have been properly preserved at the trial court level, an appellate court has the power to consider the issue when "necessary to serve the interests of justice or to prevent a denial of fundamental rights." *State v. Clemons*, 251 Kan. 473, 483, 836 P.2d 1147 (1992).

In order for a trial judge's improper comments to require a reversal of a conviction, "it must affirmatively appear that the conduct was of such a nature that it prejudiced the substantial rights of the complaining party." *State v. Nguyen*, 251 Kan. 69, Syl. ¶ 4, 833 P.2d 937 (1992).

However, the mere possibility of prejudice from a remark will not result in a reversal where an interpretation can reasonably be given to the remark that would render it unobjectionable. *Plains Transport of Kansas, Inc. v. Baldwin*, 217 Kan. 2, 10, 535 P.2d 865 (1975).

In deciding if prosecutorial misconduct warrants reversal, "an appellate court determines whether there was little or no likelihood the error changed the result of the trial." *State v. Chism*, 243 Kan. 484, 493, 759 P.2d 105 (1988).

Chappell alleges that statements by the trial court and the prosecutor in vouching for the credibility of B.C. invade the province of the jury and deny his right to a fair trial guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution and Section 10 of the Kansas Constitution Bill of Rights. The United States Supreme Court has recognized that the Due Process Clause guarantees the precept of fundamental fairness in criminal trials. *Spencer v. Texas*, 385 U.S. 554, 563-64, 17 L. Ed. 2d 606, 87 S. Ct. 648 (1967).

The Kansas Supreme Court, in discussing the role of the trial judge, has stated:

"In *State v. Winchester*, [166 Kan. 512, 203 P.2d 229 (1949),] we stated that where the judge deems it necessary to cross-examine witnesses, he must exercise great care to prevent giving the jury the impression that he is biased against the defendant and he must not forget the function of a judge and assume that of an advocate. The same rule applies with respect to the credibility of a witness and *a judge should exercise great care and caution to say nothing within the hearing of the jury which would give them an indication of what he thought about the truth or falsity of any part of the testimony*. This admonition was recently repeated in *State v. Jones*, [204 Kan. 719, 466 P.2d 283 (1970)]. These admonitions are prompted by the truism that a jury has a natural tendency to look to the trial judge for guidance, and may find it even where it is not intended." *State v. Boyd*, 222 Kan. 155, 159, 563 P.2d 446 (1977).

Allegations of judicial misconduct must be decided based upon the surrounding facts and circumstances. *State v. Stoops*, 4 Kan. App. 2d 130, 132, 603 P.2d 221 (1979). Here, the surrounding facts and circumstances reveal that this was an extremely close case in which the jury was primarily required to weigh and contrast the credibility of B.C. and Chappell. Accordingly, it was critical that the trial judge say nothing that would give the jury the impression that he found B.C. to be credible.

In this light, the comments of the trial judge became problematic when the judge stated, in the presence of the jury, that B.C. was capable of telling the truth and had answered all questions truthfully.

The State contends the remarks are subject to the harmless error standard. We find the error is not harmless when the surrounding facts and circumstances are considered. The trial court improperly lent its exalted weight to the testimony of the prosecution's primary witness in a closely balanced case. Moreover, the State compounded the error during its voir dire of the witness by stating that it was satisfied that B.C. was capable of telling the truth and had given illustrations of her ability to tell the truth. This court has previously observed that it is reversible error for a prosecutor to vouch for the credibility of a witness. *State v. Gammill*, 2 Kan. App. 2d 627, 632, 585 P.2d 1074 (1978).

Chappell has identified several cases from other jurisdictions which are instructive in the present matter. Those include *People v. Rush*, 250 Ill. App. 3d 530, 620 N.E.2d 1262, *cert. denied* 153

Ill. 2d 567 (1993); *State v. Zamorsky*, 159 N.J. Super. 273, 387 A.2d 1227 (1978); and *State v. Suttles*, 767 S.W.2d 403 (Tenn. 1989). We find *Zamorsky* to be most closely on point.

In *Zamorsky*, the trial judge interrogated a child witness in the presence of the jury to determine the child's competency as a witness. At the conclusion of the interrogation, the trial judge stated, " 'I think she will try to tell us the truth. I will find her qualified.' " 159 N.J. Super. at 281. The trial judge further stated, " 'We have to judge what the child [*sic*] to see whether the *child will tell her version truthfully, just as you would with any of your children.*' [Emphasis supplied]." 159 N.J. Super. at 281.

The *Zamorsky* court held that the trial court's comments were inherently prejudicial because they conveyed to the jury the impression that the trial court found the child witness to be credible. The *Zamorsky* opinion reasoned: "There is no doubt that K's testimony was crucial to the State's case. The implied indorsement of her credibility by the trial judge thus 'had the capacity to tip the scale against defendant.' " *Zamorsky*, 159 N.J. Super. at 281-82 (quoting *State v. Corbo*, 32 N.J. 273, 276, 160 A.2d 625 [1960]).

A trial court must avoid making any comments which could be interpreted by a jury as an endorsement of the credibility of a witness. As in *Zamorsky*, the trial judge's comments in the present matter improperly lent credence to the testimony of B.C.

The evidence in this matter was closely balanced, with the outcome hinging upon the jury's perception of B.C.'s credibility. Under these circumstances, the trial court's comments during the interrogation of B.C. in the presence of the jury substantially prejudiced Chappell's right to a fair trial.

The purpose of the interrogation was to determine whether B.C. understood her duty to tell the truth, not whether she would tell the truth. The *Zamorsky* court states:

"Interrogating a child offered as a witness, where the qualification of the child to testify is in issue, is a difficult task which cannot be performed in a *pro forma* or perfunctory manner. Since the goal is to ascertain the child's comprehension of the duty of a witness to tell the truth, it is first necessary to explore the child's conceptual awareness of truth and falsehood. The younger the child, the more searching the inquiry must be. When it has been established that the child un-

derstands the meaning of those terms, the next area of inquiry is not, as is so often the case, whether the child *will tell the truth*, but rather whether the child understands that it is his or her *duty to tell the truth*. . . . It should suffice if the child understands that it is wrong to tell a lie and that one must always speak the truth. If the trial judge is satisfied from his interrogation that the child is sensitive to his or her obligation to tell the truth, we will not disturb his conclusion unless it is plainly unsupported by the evidence." 159 N.J. Super. at 280.

The credibility of B.C. was for the jury to determine. However, the trial court's comments conveyed a message to the jury that B.C. would tell the truth while testifying and, thus, was credible. We recognize that the remarks made by the trial judge during his voir dire of B.C. were well intentioned; however, Chappell has a right to a fair trial devoid of comments by the court which bolster the credibility of the State's primary witness.

In those instances where the qualification of a child witness to testify is in issue, the voir dire, whether conducted by court or counsel, should occur outside the presence of the jury. The failure to adopt this procedure in conducting the voir dire of B.C. allowed the jury to hear the improper comments of the trial court and prosecutor. This compels us to find that Chappell was seriously prejudiced and his constitutional right to a fair trial was, accordingly, denied. Chappell's convictions are, therefore, reversed, and this matter is remanded for a new trial. In view of this determination, other issues raised on appeal need not be addressed.

Reversed and remanded for a new trial.