SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**State of New Jersey v. David Bueso (A-15-14) (074261)**

**Argued November 9, 2015 -- Decided June 8, 2016**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, the Court considers the manner in which a trial court should assess the competency of a child witness to testify.

In 2009, when M.C. was five years old, her father's cousin, M.L.G., was her occasional babysitter. According to M.C.'s mother, M.C. reported that defendant, who was M.L.G.'s boyfriend, sexually abused her on two occasions. The first incident occurred on an unspecified date when M.L.G. chipped a tooth and went into the bathroom, leaving M.C. with defendant. M.C. claimed that she was abused by defendant for the second time on March 29, 2009, hours before a surprise birthday party held for M.L.G. at the child's home.

The matter was referred to the Division of Youth and Family Services (now the Division of Child Protection and Permanency). The Division contacted the county prosecutor's office and, in a subsequent interview with a detective, M.C. reiterated the allegations that her mother had reported. Defendant was charged with two counts of first-degree aggravated sexual assault, two counts of second-degree sexual assault, and two counts of third-degree endangering the welfare of a child. Three of the counts related to the incident alleged to have occurred on the day M.L.G. chipped her tooth. The remaining charges arose from the alleged incident on the day of M.L.G.'s birthday party. Prior to trial, the trial court denied defendant's motion to dismiss the indictment and also denied his motion to suppress M.C.'s statement to her mother and the recording of the detective's interview of the child.

At trial, the State called M.C. to the stand for a competency examination. The State asked M.C. about whether it would be a lie for her to tell her teacher that she had done her homework, when she had not. M.C. agreed that would be a lie. The State then asked if M.C. understood that she had to tell the truth in court. M.C. confirmed that she did. Thereafter, the trial court offered defense counsel the opportunity to ask questions, to which defense counsel responded, "[n]o objection, Judge." After briefly questioning M.C., the court found M.C. competent and permitted her to testify.

M.C. testified that the abuse occurred "a lot" and "more than four times." She reiterated her account of the abuse on the day that M.L.G. chipped her tooth, but stated that on the day of the birthday party, defendant "didn't do it." Defendant denied all allegations of sexual abuse and claimed that he was never alone with M.C. at the time of either of the incidents. He claimed that on the day of M.L.G.'s birthday party, identified as the date on which he sexually abused the child for the second time, he was at an auto repair shop waiting for his employer's vehicle to be repaired. He supported his alibi defense with the testimony of employees at the auto repair shop, who corroborated his testimony.

The jury convicted defendant of one count each of aggravated sexual assault, sexual assault, and endangering the welfare of a child, all relating to the incident on the day that M.L.G. chipped a tooth, and acquitted him of the three remaining charges. After merger of the sexual assault offense into the aggravated sexual assault offense, the court sentenced defendant to a fifteen-year term of incarceration subject to the No Early Release Act, with parole supervision for life pursuant to Megan's Law. The court imposed a concurrent four-year term of incarceration for endangering the welfare of a child.

Defendant appealed his conviction and sentence. For the first time on appeal, defendant argued that the trial court erred when it ruled that M.C. was competent to testify. The panel reversed defendant's conviction, holding that the trial court's competency determination constituted plain error. The panel found that the trial judge was required to question M.C. personally, and to directly ascertain her comprehension of a witness's duty to tell the truth, but that the court improperly delegated that responsibility to the prosecutor. The panel held that the record before the trial court did not support its determination that M.C. was competent. The Court granted the State's petition for certification. 200 N.J. 40 (2014).

**HELD**: When the witness is a child, the concepts of truth, falsehood, and punishment may be difficult to reach with open-ended questions. Subject to the discretion of the trial judge, who must carefully monitor the examination to ensure that the child's answers are his or her own, leading questions may be used in a competency inquiry. There

was no plain error in the procedure used by the trial court in this case.

1. Because defendant did not object to the trial court's ruling that M.C. was competent to testify, Rule 2:10-2 prescribes the applicable standard of review. That rule provides that any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result. (pp. 11-12)

2. N.J.R.E. 601 provides that all persons should be qualified to testify, and that disqualification should be the exception. Accordingly, any claim of disqualification must be strictly construed against exclusion and in favor of admitting any relevant testimony the witness may offer. When the witness is an adult, competency hinges in part on the witness's capacity to understand the nature and obligations of an oath. That objective is complicated in the case of a child witness, who may be incapable of understanding either the concept of divine punishment or the legal implications of false swearing. In the majority of reported decisions in which appellate courts affirmed competency determinations, the judge personally conducted the questioning of the child. (pp. 13-15)

3. Direct questioning by the trial judge, with immediate follow-up on an evasive or inconclusive response, may be the most effective method to probe the child's understanding of the importance of telling the truth in the formal setting of a courtroom. However, the Court has never held that the questioning of the witness is the exclusive province of the trial judge as a child may be more candid and forthcoming in response to questions posed by an attorney with whom he or she has a rapport. It is the trial court's charge to make certain that any questioning by counsel is conducted fairly, and to supplement counsel's questions as necessary to ensure the integrity of the proceeding. Subject to the trial court's careful oversight, leading questions may be used in the examination of a child witness. Accordingly, a court may in its discretion allow counsel to use leading questions in order to elicit testimony from a child. (pp. 16-19)

4. With substantial discretion, the trial court's task is to determine whether the child witness appreciates the distinction between truth and lies. The trial court's competency inquiry should focus on whether the child understood her duty to tell the truth. The testimony should establish that the child understood the distinction between telling the truth and lying, that he or she understood that it was important to tell the truth in court, and that he or she anticipated negative consequences in the event of a lie. (pp. 19-24)

5. Here, the trial court's decision was based on a three-part inquiry. First, using leading and non-leading questions, the prosecutor introduced the concept of telling a lie in the context of M.C.'s obligation to do her homework. In the second phase, conducted by the prosecutor posing leading questions, the inquiry became more pointed. The prosecutor inquired about the consequences of lying, and compared the duty to tell the truth at school to the duty to testify truthfully in court. Finally, the trial judge questioned the witness, challenging her to declare whether the judge's own hypothetical misstatement of fact —- that a rectangular book was round -– constituted the truth or a lie. It is within a trial court's broad discretion to permit questioning by the prosecutor, particularly in the initial phase of the inquiry as the witness becomes comfortable in the intimidating setting of a courtroom. (pp. 24-25)

6. When the witness is a child, the essential concepts of truth, falsehood, and punishment may be difficult to reach with open-ended questions. Subject to the discretion of the trial judge, leading questions may be used in a competency inquiry. There was no plain error in the procedure used by the trial court in this case. Given N.J.R.E. 601's preference for the admission of relevant evidence, and the plain error standard that governs this case, the inquiry conducted before the trial court was minimally sufficient to support the trial court's finding of competency. Although the examination conducted in this case satisfied N.J.R.E. 601, the inquiry was well short of ideal. Trial courts and counsel should develop the record on the question of competency by means of thorough and detailed questioning of the child witness. (pp. 25-29)

The judgment of the Appellate Division is **REVERSED**. The matter is **REMANDED** to the Appellate Division for consideration of the issues it did not reach in defendant's appeal.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON'S opinion. JUSTICE FERNANDEZ-VINA did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

        v.

DAVID BUESO (a/k/a YASMIN
BUESO, DAVID ABEJAEL BUESO,
YASMIN A. BUESO, YASMIN
ABEJAEL BUESO, YASMIN ABIGAIL
BUESO),

    Defendant-Respondent.

Argued November 9, 2015 – Decided June 8, 2016

On certification to the Superior Court,
Appellate Division.

Sara M. Quigley, Deputy Attorney General,
argued the cause for appellant (John J.
Hoffman, Acting Attorney General of New
Jersey, attorney).

Jacqueline E. Turner, Assistant Deputy
Public Defender, argued the cause for
respondent (Joseph E. Krakora, Public
Defender, attorney).

JUSTICE PATTERSON delivered the opinion of the Court.

This appeal raises questions about the competency of a child witness and the process that a trial court should apply to address that issue. Under the New Jersey Rules of Evidence, a witness is considered competent to testify unless the court makes a finding that he or she lacks the capacity to express his

or her testimony so as to be understood, or is incapable of understanding the duty to testify truthfully. N.J.R.E. 601. In accordance with that standard, a preliminary inquiry is undertaken to determine whether a child is competent to testify at a criminal trial. See State v. G.C., 188 N.J. 118, 131 (2006).

In this appeal, defendant's conviction rested in part on the testimony of the alleged victim of sexual assault, who was seven years old at the time of trial. Pursuant to N.J.R.E. 601, the trial court held a competency hearing and found the child witness was competent to testify. The Appellate Division reversed defendant's conviction.

We agree with the trial court's determination. We reject the State's argument that defendant waived his right to appeal the competency finding when he failed to object to that finding at trial, and accordingly review the trial court's determination for plain error. We also do not construe the relevant Rules of Evidence or our case law to require that the court must conduct all questioning of a child witness, or to preclude the use of leading questions in a competency hearing. Although the trial court and the prosecutor should have conducted a more detailed inquiry as to M.C.'s understanding of her duty to tell the truth on the witness stand, the court's determination that she was competent was not an abuse of discretion.

2

Accordingly, we reverse the judgment of the Appellate Division, and remand to the panel for consideration of the issues that it did not reach in defendant's appeal.

## I.

The alleged acts that gave rise to this case occurred in 2009, when M.C. was five years old. The child's occasional babysitter was M.L.G., M.C.'s father's cousin. M.L.G. was defendant's girlfriend and shared a home with him.

According to M.C.'s mother, M.C. reported that defendant had sexually abused her on two occasions. The first incident alleged by M.C. occurred on an unspecified date when the babysitter, M.L.G., chipped a tooth and went into the bathroom to attend to her tooth, leaving M.C. with defendant. M.C. claimed that she was sexually abused by defendant on a second occasion, on the morning of March 29, 2009, hours before a surprise birthday party held for M.L.G. at the child's home.

The child's mother notified M.L.G. about M.C.'s allegations. Defendant contacted M.C.'s mother to deny that he sexually abused M.C. The matter was referred to the Division of Youth and Family Services (now the Division of Child Protection and Permanency). The Division contacted the county prosecutor's office. In an interview with a detective from the prosecutor's office, M.C. reiterated the allegations that had been reported by her mother.

3

Defendant was charged with two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b); and two counts of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a).  Three of the counts related to the incident alleged to have occurred on day the babysitter, M.L.G., chipped her tooth.  The remaining three arose from the alleged incident on the day of the babysitter's birthday party.  Prior to trial, the trial court denied defendant's motion to dismiss the indictment and also denied his motion to suppress M.C.'s statement to her mother and the videotape of the detective's interview of the child.

At trial, following the testimony of M.C.'s mother, the State called M.C. to the stand for a competency examination. The State initially questioned M.C. about whether it would be a lie for her to tell her teacher that she had done her homework, when she had not:

> [Prosecutor]: Now, if you forgot to do your spelling homework -- you didn't do your spelling homework -- and you told your teacher you did the spelling homework, would that be a lie?
>
> [M.C.]:  Yes.
>
> [Prosecutor]:  And what would your teacher do if you told her you did your spelling homework --
>
> [M.C.]:  He's going to --

[Prosecutor]: -- but you didn't do your spelling homework?

[M.C.]: He's going to put me an X in the homework.

[Prosecutor]: She's going to do what?

[M.C.]: Put me an X.

[Prosecutor]: She's going to make you do the next homework?

[M.C.]: No. She -- he's going to put an X.

[Prosecutor]: Oh. Put an X? So, he -- your teacher's a man? Yes? You just have to say out loud --

[M.C.]: Yes.

[Prosecutor]: -- yes or no. So, your teacher, who's a male, would put an X?

[M.C.]: Yes.

[Prosecutor]: Is the X good or bad?

[M.C.]: Bad.

[Prosecutor]: What happens if you get a lot of X's?

[M.C.]: You probably not play with that -- be alone.

[Prosecutor]: You'd be alone?

The State then introduced the subject of telling the truth in court in its examination of the child:

[Prosecutor]: Everything you do today in court, you have to tell the truth. Do you understand that?

[M.C.]: Yes.

[Prosecutor]: So, is it good to tell the truth?

5

[M.C.]: Yes.

[Prosecutor]: And is it bad to tell a lie?

[M.C.]: Yes.

[Prosecutor]: And do you understand bad things happen if you tell a lie in court. Do you understand that?

[M.C.]: Uh-un. No.

[Prosecutor]: Do you understand that bad things happen if you tell a lie in school?

[M.C.]: Yes.

[Prosecutor]: So, just like if you tell a lie in school, if you tell a lie here in this place, the court, bad things happen. Do you understand that?

[M.C.]: Yes.

[Prosecutor]: Okay. So, everything you talk about today has to be the truth. Do you understand that?

[M.C.]: Uh-huh.

The trial judge then offered defense counsel the opportunity to ask questions. Defense counsel responded, "[n]o objection, Judge." The judge then briefly questioned the child:

[The Court]: All right. Let me just ask you a question. See that book there?

[M.C.]: Uh-huh.

[The Court]: If I told you that that book is round, would that be a truth or a lie?

[M.C.]: A lie.

6

[The Court]:  Why?

[M.C.]:  Because it's a rectangle.

[The Court]: Because it's a rectangle.  Okay.  So, you know the difference between telling what is and what isn't, right?  What really is and what really isn't?  Truth or a lie, right?  Okay.  Thanks. You can proceed.

Having determined that M.C. was competent, the trial court permitted her to testify.  M.C. told the jury about the alleged abuse by defendant, which she said occurred "a lot" and "more than four times," at the home shared by defendant and M.L.G., when M.L.G. was babysitting for her.  M.C. reiterated her earlier account of alleged abuse on the day that M.L.G. had chipped a tooth, but did not repeat her prior statement that defendant had abused her at her own home on the day of M.L.G.'s birthday party.  When cross-examined by defense counsel, M.C. gave a more detailed account of the alleged sexual abuse on the day that her babysitter chipped a tooth, but stated that on the date of the birthday party, defendant "didn't do it."

The State called additional fact witnesses and an expert witness on pediatric sexual abuse.  Defendant testified on his own behalf.  He denied all allegations of sexual abuse and testified that he was never alone with M.C. at the time of either of the incidents reported by the child.  Defendant testified that on the day of M.L.G.'s birthday party, identified by M.C. as the date on which he sexually abused the child for

7

the second time, he was at an auto repair shop waiting for his employer's vehicle to be repaired. Defendant supported his alibi defense with the testimony of employees at the auto repair shop, who corroborated his testimony that he spent that morning waiting for his employer's vehicle to be repaired. M.L.G. testified that on the date that she chipped her tooth, she only briefly went to the bathroom to check her tooth, and that defendant was not left alone with M.C. M.L.G.'s mother also testified, corroborating some of defendant's testimony and that of M.L.G.

The jury convicted defendant of three charges, one count of first-degree aggravated sexual assault, one count of second-degree sexual assault, and one count of third-degree endangering the welfare of a child, all relating to the alleged incident on the day that M.C.'s babysitter chipped a tooth. The jury acquitted defendant on the three remaining charges, all of which involved allegations of abuse on the date of the birthday party, for which defendant presented an alibi. The trial court denied defendant's motion for a new trial.

After merger of the second-degree sexual assault offense into the first-degree aggravated sexual assault offense, the court sentenced defendant to a fifteen-year term of incarceration subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, with parole supervision for life pursuant to

8

Megan's Law, N.J.S.A. 2C:43-6.4, as well as fines and fees. The court also imposed a concurrent four-year term of incarceration for defendant's conviction for third-degree endangering the welfare of a child.

Defendant appealed his conviction and sentence. For the first time on appeal, defendant argued that the trial court erred when it ruled that M.C. was competent to testify.

In an unpublished opinion, an Appellate Division panel reversed defendant's conviction. Relying primarily on State v. Zamorsky, 159 N.J. Super. 273, 280 (App. Div. 1978), certif. granted, 79 N.J. 485, on remand, 170 N.J. Super. 198, 199-200 (App. Div. 1979), certif. denied, 82 N.J. 287, cert. denied, 449 U.S. 861, 101 S. Ct. 172, 66 L. Ed. 2d 78 (1980), the panel held that the trial court's competency determination constituted plain error. It concluded that the trial judge was required to question M.C. personally and directly to ascertain her comprehension of a witness's duty to tell the truth and her conceptual awareness of truth and falsehood and that the judge improperly delegated that responsibility to the prosecutor. The panel also criticized the prosecutor's reliance on leading questions. It held that the record before the trial court did not support the trial court's determination that M.C. was competent, and that the trial court committed plain error.

9

We granted the State's petition for certification. 220 N.J. 40 (2014).

II.

The State urges the Court to reverse the Appellate Division's judgment. It asserts that defendant waived his right to contest the trial court's competency finding on appeal by declining to object to that determination at trial. The State argues that the Appellate Division improperly focused on technical considerations, such as the prosecutor's role in the questioning of M.C. and her use of leading questions. It notes that leading questions are commonly used during the examination of child witnesses and contends that the panel incorrectly stated that the trial court was constrained to conduct the examination. Relying on State v. R.R., 79 N.J. 97, 114 (1979), the State contends that the trial court properly exercised its discretion in permitting M.C. to testify. It asserts that by virtue of her responses to questions posed by the trial court and the prosecutor, M.C. demonstrated that she appreciated the distinction between truth and falsehood, understood the importance of truth telling and anticipated negative consequences if she were to tell a lie on the witness stand.

Defendant urges the Court to affirm the judgment of the Appellate Division. He contends that plain error is the applicable standard of review and disputes the State's assertion

10

that he waived his right to contest the competency determination on appeal by failing to object at trial. Defendant argues that the trial court committed plain error in this case. He asserts that the Appellate Division correctly concluded that the trial court improperly failed to conduct a thorough examination of M.C. before permitting her to testify. Defendant argues that the proper inquiry is whether the trial court based its determination of competency on a showing that M.C. understood her moral responsibility to tell the truth and that there was no such showing in this case.

III.

A.

Because defendant did not object to the trial court's ruling that M.C. was competent to testify, Rule 2:10-2 prescribes the applicable standard of review. That rule provides that "[a]ny error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result" and that a reviewing court "may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court." R. 2:10-2; see also Pressler & Verniero, Current N.J. Court Rules, comment 2.1 on R. 2:10-2 (2016) (noting plain error is "error not properly preserved for appeal but of a magnitude dictating appellate consideration"); State v. McKinney, 223 N.J.

11

475, 494 (2015) (applying plain error standard to failure to object to jury instructions); State v. R.K., 220 N.J. 444, 456 (2015) (applying Rule 2:10-2 plain error standard to limiting instruction in absence of objection); State v. Ross, 218 N.J. 130, 142-43 (2014) (applying plain error to failure to object to juror substitution); State v. Stas, 212 N.J. 37, 58 (2012) (applying plain error standard to trial court's reliance on defendant's silence in conviction).

We do not concur with the State's position that by failing to object to a competency determination, a defendant waives his or her right to challenge that determination on appeal.[1] Nothing in Rule 2:10-2 or our case law suggests that a trial court's ruling on the competency of a witness warrants an exception to the plain error standard of review. Moreover, that high standard provides a strong incentive for counsel to interpose a

---

[1] In support of its argument, the State does not rely on New Jersey case law, but on federal authority and case law from several states. See Benson v. United States, 146 U.S. 325, 332, 13 S. Ct. 60, 62, 36 L. Ed. 991, 995 (1892) (observing defendant waived objection to testimony "by not objecting to her testimony at the time it was offered"); United States v. Odom, 736 F.2d 104, 112 (4th Cir. 1984) (holding absent objection, "any claim of incompetency of the witness is waived"); Rhymes v. State, 356 So.2d 1165, 1169 (Miss. 1978) (noting cross-examination of witness waived right to challenge competency of witness); Bowman v. State, 598 S.W.2d 809, 811 (Tenn. Crim. App. 1980) (noting "defendant waived any objection he might have had to the competency of . . . a witness [when] [n]o objection was made"). We decline to adopt the principles stated in those cases.

12

timely objection, enabling the trial court to forestall or correct a potential error.  See State v. Johnson, 31 N.J. 489, 511 (1960) ("A timely objection gives the trial court and the prosecutor an opportunity to counteract the effect of any unseemly remark."); State v. Douglas, 204 N.J. Super. 265, 274 (App. Div. 1985) (noting timely objections allow for curative instructions), certif. denied, 102 N.J. 378 (1985); see also State v. Wilson, 57 N.J. 39, 51 (1970) (observing "a timely objection [also] signifies that the defense believes itself to have been prejudiced by the prosecutor's remarks").  We discern no reason to deviate from that standard in this case.

Accordingly, we review the trial court's competency determination for plain error.

B.

"[O]ur 'system of justice . . . has established as a general rule that all persons should be qualified to testify, and that disqualification should be the exception[.]'"  G.C., supra, 188 N.J. at 133 (alteration in original) (quoting Germann v. Matriss, 55 N.J. 193, 217 (1970)).  That governing principle is reflected in N.J.R.E. 601, which provides:

> Every person is competent to be a witness unless (a) the judge finds that the proposed witness is incapable of expression concerning the matter so as to be understood by the judge and jury either directly or through interpretation, or (b) the proposed witness is incapable of understanding the duty of a

witness to tell the truth, or (c) except as otherwise provided by these rules or by law.

Accordingly, any claim of witness disqualification must be strictly construed against exclusion and in favor of admitting any relevant testimony the witness may offer. See G.C., supra, 188 N.J. at 132.

Typically, when the witness is an adult, competency hinges in part on the witness's capacity "to understand the nature and obligations of an oath[.]" Id. at 131 (quoting State v. Butler, 27 N.J. 560, 602 (1958)). N.J.R.E. 603 requires that a witness "take an oath or make an affirmation or declaration to tell the truth under the penalty provided by law." A witness may not be barred from testimony "because of religious belief or lack of such belief." Ibid. Thus, the mandated oath need not be an expression of religious belief; instead, it serves "as a vehicle to remind the witness that he has a special obligation to speak the truth in court." R.R., supra, 79 N.J. at 110.

That objective is complicated in the case of a child witness, who "may be incapable of understanding either the concept of divine punishment or the legal implications of false swearing." Ibid. Consequently, "[a]ny ceremony which obtains from an infant a commitment to comply with" the obligation to testify truthfully, "on pain of future punishment of any kind[,]" satisfies the requirement of an oath. Id. at 111. In

14

a prosecution for a sexual offense in which the alleged victim

is a child, who may be the sole witness to the offense,

> [w]e accept something different in the way of an oath from child victim witnesses for two reasons. First, "any holding to the contrary would virtually preclude children from testifying against their assailants." Second, we are confident that "allowing departures from the traditional oath will not result in convictions based upon the word of infants incapable of understanding the difference between right and wrong."
>
> [G.C., supra, 188 N.J. at 131 (quoting R.R., supra, 79 N.J. at 111).]

N.J.R.E. 601 does not prescribe the procedure by which

trial courts develop a record to determine competency. In the

majority of reported decisions in which appellate courts

affirmed competency determinations, the judge personally

conducted the questioning of the child. See, e.g., G.C., supra,

188 N.J. at 126 (noting court questioned child witness); State

v. Krivacska, 341 N.J. Super. 1, 32 (App. Div.) (stating trial

judge questioned alleged victims, who were children residing in

facility for special-needs students), certif. denied and appeal

dismissed, 170 N.J. 206 (2001), cert. denied., 535 U.S. 1012,

122 S. Ct. 1594, 152 L. Ed. 2d 510 (2002); State v. Walker, 325

N.J. Super. 35, 41 (App. Div. 1999) (observing trial judge

"relied on his observations of [the child] at the voir dire

during pretrial motions and upon the report prepared by [the

child]'s treating psychiatrist" to make competency

15

determination), certif. denied, 163 N.J. 74 (2000); Zamorsky, supra, 159 N.J. Super. at 280 (acknowledging trial court conducted questioning of child in one of two proceedings). Direct questioning by the trial judge, with immediate follow-up on an evasive or inconclusive response, may be the most effective method to probe the child's understanding of the importance of telling the truth in the formal setting of a courtroom.

This Court, however, has never held that the questioning of the witness is the exclusive province of the trial judge.[2] Our case law recognizes that a prosecutor's examination of a child witness may be appropriate in a given case. In R.R., supra, the child witness was questioned in turn by the trial judge, court clerk, prosecutor, and defense counsel. 79 N.J. at 104.[3] Similarly, in State v. T.E., 342 N.J. Super. 14, 27 (App. Div.),

---

[2] To the extent that the first Appellate Division panel in Zamorsky, supra, 159 N.J. Super. at 280-82, intended to state a rule barring counsel from questioning a witness when it commented that a judge must be satisfied from "his interrogation" that the child understands the duty to tell the truth, we do not endorse such a requirement.

[3] The Court's statement in R.R., supra, that when a party challenges a witness's competency to testify, the trial court should "conduct a preliminary inquiry," does not mandate that questioning be conducted by the trial judge. See 79 N.J. at 113 (citing Evid. R. 8). As is confirmed by the citation to Evid. R. 8, the predecessor rule to N.J.R.E. 104, the Court's comment is a reference to the judge's responsibility to determine the preliminary question of competency, not to the procedure for examining the witness. Ibid.

certif. denied, 170 N.J. 86 (2001), the Appellate Division

acknowledged that the "preferred procedure" is for a court

officer to "administer a 'traditional' oath and for the judge to

engage in colloquy constituting its functional equivalent with a

youthful witness."  However, the T.E. panel rejected the

defendant's argument that, by conducting the competency

examination of a child victim, the prosecutor usurped the

court's function.  Ibid.  A child may be more candid and

forthcoming in response to questions posed by an attorney with

whom he or she has a rapport.  It is the trial court's charge to

make certain that any questioning by counsel is conducted

fairly, and to supplement counsel's questions as necessary to

ensure the integrity of the proceeding.

Subject to the trial court's careful oversight, leading

questions may be used in the examination of a child witness.

N.J.R.E. 611(c) provides:

> Leading questions should not be used on the
> direct examination of a witness except as may
> be necessary to develop the witness'
> testimony.  Ordinarily, leading questions
> should be permitted on cross-examination.
> When a party calls an adverse party or a
> witness identified with an adverse party, or
> when a witness demonstrates hostility or
> unresponsiveness, interrogation may be by
> leading questions, subject to the discretion
> of the court.

The purpose of N.J.R.E. 611(c) is to "encourage testimony

from the witnesses, rather than evidence resulting from the

17

prompting of counsel." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, comment 8 on N.J.R.E. 611(c) (2015). Trial judges are vested with broad discretion over the mode of interrogation to "make the interrogation . . . effective for ascertainment of the truth, and . . . protect witnesses from harassment or undue embarrassment." T.E., supra, 342 N.J. Super. at 29-30 (quoting N.J.R.E. 611(a)).

Moreover, leading questions are frequently permitted in the examination of child witnesses. See Biunno, Weissbard & Zegas supra, comment 8 on N.J.R.E. 611(c) (noting questioning of youthful witnesses is "[a] prime example" of when leading questions are necessary); State v. Smith, 158 N.J. 376, 390 (1999) ("[T]he use of leading questions to facilitate an examination of child witnesses who are hesitant, evasive or reluctant is not improper."); T.E., supra, 342 N.J. Super. at 30 (recognizing protecting children from "undue trauma" is weighty public policy goal warranting use of leading questions); State in Interest of B.G., 289 N.J. Super. 361, 370 (App. Div.) (granting counsel "substantial leeway" to ask leading questions of child witnesses), certif. denied, 145 N.J. 374 (1996)). Accordingly, "[i]t is well-settled that a court may in its discretion allow counsel to use leading questions in order to elicit testimony from an infant." R.R., supra, 79 N.J. at 114-15.

With substantial discretion regarding the form of questioning, the trial court's task is to determine whether the child witness appreciates the distinction between truth and lies, and comprehends his or her duty to tell the truth.  The showing necessary for a competency determination is illustrated by this Court's prior applications of N.J.R.E. 601 in child sexual abuse cases.  In R.R., the Court reviewed the trial court's finding that the alleged victim, a four-year-old boy, was competent to testify in the defendant's trial.  Id. at 103-06.  After the trial court rejected the defendant's argument that the child was incompetent by virtue of his age, the court clerk conducted the following inquiry:

> The Clerk:  Will you tell the truth to this Court?
>
> The Witness:  Yes.
>
> The Clerk:  Do you believe in God?
>
> The Witness:  Yes.
>
> The Clerk:  If you lie do you believe that God will punish you?
>
> The Witness:  No.
>
> The Clerk:  God will not punish you if you tell a lie?  Or will he punish you?
>
> The Witness:  He will.
>
> The Clerk:  He will.  The boy is sworn, Judge.
>
> [Id. at 104.]

19

In response to a challenge by the defendant to the court's initial finding of competency in R.R., the trial court and counsel further examined the child. Ibid. That inquiry established that the child always obeyed his teacher, that his teacher would scold him if he did things "wrong," that he never did things "wrong" at home, that truthfulness denotes being "good," and that if he told a lie, he would be "bad" and get a "beating." Ibid. The child assured the court that he would not be "bad" while answering questions in court, promised to report the facts "the way it [was]." Ibid. (alteration in original). The defendant was convicted and appealed. The Appellate Division upheld the trial court's competency determination, but ruled the child's testimony inadmissible because the court had not administered a traditional oath. Id. at 107.

This Court reversed the Appellate Division's judgment. Id. at 121. It noted that a trial court must determine "whether the child possesses 'moral responsibility' -- that is, a consciousness of the duty to tell the truth." Id. at 113. It observed that "[s]o long as the child understands (a) the difference between right and wrong; (b) that to tell the truth is 'right'; and (c) that he will be punished in some way should he lie to the court, this requirement is satisfied." Id. at 114. The Court concurred with the trial judge's conclusion that

20

the child witness understood his duty to speak the truth on the witness stand.  Ibid.[4]

The same standard was applied in G.C., supra, 188 N.J. at 132-33.  In G.C., the State presented the testimony of the defendant's five-year-old daughter, the victim of his alleged sexual abuse.  Id. at 121, 125-27.  In response to a defense objection to the child's competency to testify, the trial court agreed to "mak[e] certain that this witness can understand the difference between the truth and a lie."  Id. at 125. Questioned by the trial judge outside the presence of the jury, the child stated that it was "[n]ot good" to tell a lie and that it is "good to tell the truth."  Id. at 125-26.  Defense counsel asked for a more specific inquiry about the witness's understanding of the consequences of lying, and the trial judge continued:

---

[4]  On the same day that it decided R.R., the Court granted the State's petition for certification in Zamorsky and remanded for reconsideration in light of R.R..  See State v. Zamorsky, 79 N.J. 485 (1979).  The Appellate Division in Zamorsky, supra, in reversing defendant's conviction on one of two charges of impairing the morals of a minor, applied a two-step inquiry for determining whether a child witness was competent to testify: first, an exploration of the child's understanding of the concepts of truth and falsehood, and second, a discussion of his or her understanding of the duty to tell the truth.  See 159 N.J. Super. at 280.  On remand, the Appellate Division vacated its reversal of the defendant's conviction after finding that the trial court's colloquy with the child demonstrated "a sufficient commitment by the child to tell the truth on pain of some kind of punishment."  Zamorsky, supra, 170 N.J. Super. at 202.

The Court:  Now, before when you came in and we talked a little bit, I asked you if it was good to tell the truth.  Do you remember that?

[The Witness]:  (Nods.)

The Court:  And I asked you about telling a lie.  Do you remember that?

[The Witness]:  (Nods.)

. . . .

The Court:  When you talk to [the jury], are you going to tell the truth or are you going to tell a lie?

[The Witness]:  I'm not going to tell the lie. I will tell the truth.

The Court:  Okay.  That's what we want you to do.  Okay?

[The Witness]:  (Nods.)

The Court:  Are you going to tell the truth?

[The Witness]:  (Nods.)

[Id. at 126.]

The trial court overruled the defendant's objection to the child's competence to testify.  Ibid.  The Appellate Division reversed the trial court's determination, holding that the court's inquiry was insufficient to ascertain the child's understanding of the duty to tell the truth and the consequences of false testimony.  Id. at 128-29.

Reversing the Appellate Division's judgment, this Court held that the trial court's competency inquiry properly focused

22

on whether the child understood her duty to tell the truth, a duty that "necessarily implicates the consequences arising as a result of a failure to comply with the duty." Id. at 133. Accordingly, the Court upheld the trial court's determination that the child was competent to be a witness. Ibid. Justice Wallace wrote a concurring opinion, agreeing with the majority that the witness's competence was established, but finding the court's questions "minimally sufficient" to establish the girl's understanding of the duty to tell the truth. Id. at 135 (Wallace, J., concurring).

The questioning of the children in R.R. and G.C. was not optimal; in each case, the trial court could have conducted a more thorough and enlightening examination of the witness. Neither examination erased all uncertainty about the child's comprehension of these concepts. The child witness in R.R., supra, initially stated that he did not fear divine punishment if he were to lie, and then corrected himself. 79 N.J. at 104. The child witness in G.C., supra, offered minimal -- at times nonverbal -- responses to some of the questions. 188 N.J. at 125-27.

Nonetheless, both decisions illustrate the basic elements of an adequate competency determination. In each inquiry, the testimony established that the child understood the distinction between telling the truth and lying, that he or she understood

23

that it was important to tell the truth in court, and that he or she anticipated negative consequences in the event of a lie. G.C., supra, 188 N.J. at 125-28, 133; R.R., supra, 79 N.J. at 104, 113-14.  Because our evidence rules presume the competency of a witness, see G.C., supra, 188 N.J. at 132, this Court determined in both cases that the trial court properly permitted the child witnesses to testify, id. at 133; R.R., supra, 79 N.J. at 113-14.

C.

Guided by N.J.R.E. 601 and our case law, we conduct a plain-error review of the trial court's determination that M.C. was competent to testify at defendant's trial.  R. 2:10-2.

The trial court's decision was based upon a three-part inquiry.  During the preliminary phase of the examination, the prosecutor introduced the concept of telling a lie in the context of M.C.'s obligation to do her homework.  She asked both leading and non-leading questions in a non-confrontational manner.  In the second phase, conducted by the prosecutor posing leading questions, the inquiry became more pointed.  The prosecutor inquired about the consequences of lying, and analogized the duty to tell the truth at school to the duty to testify truthfully in court.  Finally, the trial judge questioned the witness, challenging her to declare whether the

24

judge's own hypothetical misstatement of fact -- that a rectangular book was round -- constituted the truth or a lie.

We do not concur with the Appellate Division's conclusion that the trial court's competency determination was procedurally flawed because the trial court permitted the prosecutor to question M.C. Although a judge will often be in the best position to elicit candid answers from a child witness, it is within a trial court's broad discretion to permit questioning by the prosecutor, particularly in the initial phase of the inquiry as the witness becomes comfortable in the intimidating setting of a courtroom. T.E., supra, 342 N.J. Super. at 26. The record of this case suggests an unrehearsed inquiry; until she was corrected by M.C., who testified that her teacher was male, the prosecutor mistakenly assumed that the teacher was a woman. Significantly, the final phase of the questioning was conducted by the judge. We find no abuse of discretion in the prosecutor's conduct of most of the questioning.

Moreover, we do not share the Appellate Division's view that the inquiry was improper because the prosecutor asked leading questions. When the witness is a child, the essential concepts of truth, falsehood, and punishment may be difficult to reach with open-ended questions. See Biunno, Weissbard & Zegas supra, comment 8 on N.J.R.E. 611(c); Smith, supra, 158 N.J. at 390; T.E., supra, 342 N.J. Super. at 30; B.G., supra, 289 N.J.

25

Super. at 370-71. Subject to the discretion of the trial judge, who must carefully monitor the examination to ensure that the child's answers are his or her own, leading questions may be used in a competency inquiry. We find no plain error in the procedure used by the trial court in this case.

In light of N.J.R.E. 601's preference for the admission of relevant evidence, and the plain error standard that governs this case, we find that the inquiry conducted before the trial court was minimally sufficient to support the trial court's finding under the standard prescribed in R.R., supra, 79 N.J. at 114. M.C.'s testimony reflected an understanding of "the difference between right and wrong," as well as the concept that "to tell the truth is 'right.'" See ibid. The child identified, as examples of lies, two hypothetical statements posed to her: a statement to her teacher that she had done her spelling homework, when she had not, and the trial judge's suggestion that a book was round, when it was rectangular. The latter example is the more compelling of the two, because M.C. demonstrated that she was willing to confront an authority figure in the event that he made a false statement. M.C. further testified, albeit in response to leading questions, that it was "good" to tell the truth, and "bad" to tell a lie. She

confirmed that she understood that in court she had to tell the truth.[5]

Less conclusive, but nonetheless sufficient, was M.C.'s testimony about her fear of punishment in the event that she told a lie.  See G.C., supra, 188 N.J. at 133; R.R., supra, 79 N.J. at 114.  The prosecutor initially raised the topic of punishment with non-leading questions about the anticipated reaction of M.C.'s teacher if she falsely claimed to have done her homework.  The child's initial answer -- that the teacher's response would be an "X" on the homework -- was ambiguous; it was unclear whether the teacher's "X" on the homework would be a sanction for M.C.'s failure to perform the assignment, or for lying about it.  M.C. hesitated when the prosecutor pivoted to a leading question about "bad things" that would happen if she told a lie in court.  She initially responded that she did not understand that such "bad things" would happen, but then confirmed that she understood that "bad things" would follow if a lie were told in court, as they would occur if a lie were told in school.  Ultimately, the examination elicited testimony that

---

[5]  At the conclusion of the examination, the trial court asked "[s]o you know the difference between telling what is and what isn't right?  What really is and what really isn't?  Truth or a lie, right?  Okay."  Although M.C. may have nodded, or otherwise responded affirmatively, in response to those questions, her answers were unrecorded in the transcript, and we do not rely on them.

established M.C.'s understanding that lied in her testimony, she would be punished.

Thus, the competency determination was premised on a record adequate to support it. Accordingly, the trial court's finding that M.C. was competent did not constitute plain error. R. 2:10-2. Moreover, defendant's counsel had the opportunity to thoroughly cross-examine the child, exploring discrepancies between her statement to investigators and her testimony at trial. Allowing M.C. to testify, and permitting the jury to assess her credibility, did not bring about an unfair trial or unjust result.

Although we find the examination conducted in this case to satisfy N.J.R.E. 601, given the plain error standard of review that governs this appeal, we note that the inquiry conducted in this case was well short of ideal. A thorough and detailed examination of the child might have established a more compelling record. When M.C. offered her unclear comment about the consequences of a misstatement about spelling homework -- indicating that she may not have understood the import of the question -- the prosecutor should have shifted to alternative examples of falsehoods that a child might tell in the familiar setting of her school. The trial judge's brief questioning about a hypothetical lie concerning the shape of a book was instructive, but the judge's inquiry would have been more

effective had it extended beyond a single topic.  Trial courts and counsel should develop the record on the question of competency by means of thorough and detailed questioning of the child witness.[6]

In sum, the trial court did not commit plain error when it concluded that M.C.'s testimony demonstrated that she was a competent witness, under the standard of N.J.R.E. 601.  The trial court properly exercised its discretion when it permitted M.C. to be a witness at defendant's trial.

IV.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Appellate Division for its consideration of issues that it did not need to address in its review of this appeal.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON'S opinion.  JUSTICE FERNANDEZ-VINA did not participate.

---

[6]   We suggest that to assist trial courts and counsel, the Criminal Practice Committee consider developing model questions for use in competency determinations involving child witnesses.

29

SUPREME COURT OF NEW JERSEY

NO. ___A-15___                          SEPTEMBER TERM 2014

ON CERTIFICATION TO _____Appellate Division, Superior Court_____

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

          v.

DAVID BUESO (a/k/a YASMIN
BUESO, DAVID ABEJAEL BUESO,
YASMIN A. BUESO, YASMIN
ABEJAEL BUESO, YASMIN ABIGAIL
BUESO),

     Defendant-Respondent.

DECIDED        June 8, 2016
_____
        Chief Justice Rabner          PRESIDING

OPINION BY      Justice Patterson _____

CONCURRING/DISSENTING OPINIONS BY _____

DISSENTING OPINION BY _____

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | ------------------ | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |