# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2070-16T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

G.S.,

    Defendant-Appellant.

_____

Submitted February 28, 2019 – Decided June 12, 2019

Before Judges Whipple and Firko.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment Nos. 14-02-0122 and 16-01-0069.

Joseph E. Krakora, Public Defender, attorney for appellant (Brian P. Keenan, Assistant Deputy Public Defender, of counsel and on the briefs).

Michael A. Monahan, Acting Union County Prosecutor, attorney for respondent (Milton S. Leibowitz, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from the November 21, 2016 amended judgment of conviction after a jury convicted him of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1); second and fourth-degree criminal sexual contact, N.J.S.A. 2C:14-2(c) and N.J.S.A. 2C:14-3(b); and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1).  We affirm.

We discern the following facts from the record.  Defendant married his wife, J.G., in Colombia.  J.G. had a daughter, Jane,[1] in Colombia in 1993.  J.G. and defendant moved to the United States.  For several years, Jane lived with her grandmother in Colombia while her mother was in the U.S. with defendant.  When Jane was nine years old, she came to the U.S to live with her mother and defendant.

When she arrived, defendant, J.G., and their one-year-old son, were living in the basement apartment of defendant's parents' house in Elizabeth.  In 2002, defendant and J.G. had another child, Julia.  While J.G. was at the hospital giving birth to Julia, Jane was home with defendant.  At some point during the night, defendant asked Jane if she was ready to go to sleep with him, and she

---

[1] Due to the similarity of family names and initials, we use pseudonyms for ease of reference and privacy.  R. 1:38-3(d)(10).

said yes. While they were on the bed talking, defendant started to kiss Jane. He touched her breasts and her vagina and inserted his fingers into her vagina. Jane started to cry and told defendant that she was going to tell her mother. Defendant told her that she could not say anything to her mother or else something bad would happen to them.

Defendant continued to touch Jane, at least once per month, over the next two years. Jane did not disclose what happened for two years until she spoke with her guidance counsellor. The Division of Child Protection and Permanency sent investigators to speak with Jane. Fearing she may be taken away from her mother, Jane told the investigator that it was all a misunderstanding. Defendant stopped touching Jane after her disclosure.

In 2006, defendant and J.G. separated, and J.G. and the three children moved to another address. Defendant was permitted weekend visitation with his daughter and step-daughter at his house.

In 2013, then eleven-year-old Julia approached her maternal grandmother and disclosed to her, and for the first time to anyone, that defendant had been sexually assaulting her for three years when she was between the ages of nine and twelve. At night, he would pick her up, take her to his room, undress her, and then touch her vagina. On multiple occasions, defendant tried to put his

penis inside of her vagina, but Julia pushed him away with her hands and feet. Julia was afraid when these events occurred but did not scream or disclose any of the assaults because defendant threatened to kill her, Jane and her mother if she told anyone. After Julia's allegations surfaced, Jane renewed her claims about defendant.

On February 21, 2014, a Union County grand jury charged defendant in an indictment with two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b) and N.J.S.A. 2C:14-2(c)(1); two counts of fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b); and two counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), arising from both victims' allegations. A second Union County grand jury returned a second indictment, charging defendant with one count of fourth-degree contempt, N.J.S.A. 2C:29-9(a).

After a trial, the jury found defendant not guilty on counts regarding Julia, but guilty on counts related to Jane. Defendant was sentenced to twelve years imprisonment, subject to an eighty-five percent parole disqualifier pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2, parole supervision for life, and was assessed appropriate fees and penalties. This appeal followed.

On appeal, defendant argues the following:

POINT I
AFTER A PREJUDICIAL JOINDER OF OFFENSES
SEPARATED BY ALMOST A DECADE, THE TRIAL
JUDGE FAILED TO SUA SPONTE SEVER THE
CHARGES OR INSTRUCT THE JURY NOT TO USE
THE EVIDENCE FROM THE SUBSEQUENT
OFFENSE FOR PROPENSITY PURPOSES. (Not
raised below).

POINT II
THE SENTENCING JUDGE FAILED TO CREATE
AN ADEQUATE APPELLATE RECORD
REGARDING HIS FINDING OF AGGRAVATING
FACTORS, AND FAILED TO FIND MITIGATING
FACTORS SUPPORTED BY THE RECORD,
RESULTING IN A MANIFESTLY EXCESSIVE
SENTENCE.

I.

Because defendant's first point was not raised at trial, we review his

argument under the plain error rule.  See R. 2:10-2.  If an error was not brought

to the trial court's attention, we will not reverse unless the appellant shows plain

error.  State v. Bueso, 225 N.J. 193, 202 (2016).  Plain error must be "clearly

capable of producing an unjust result."  Ibid. (quoting R. 2:10-2).  However,

"[we] may, in the interests of justice, notice plain error not brought to the

attention of the trial or appellate court."  Ibid.

We reject defendant's argument the trial judge should have severed the

charges.  Rule 3:7-6 permits the State to charge multiple offenses in a single

indictment "if the offenses are of the same or similar character or are based on the same act or transaction or on [two] or more acts or transactions connected together." "Although joinder is favored, economy and efficiency interests do not override a defendant's right to a fair trial." State v. Sterling, 215 N.J. 65, 72-73 (2013). Rule 3:15-2(b) "provides relief from prejudicial joinder." Id. at 73. "The test for assessing prejudice is 'whether, assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible under [N.J.R.E. 404(b)] in the trial of the remaining charges.'" Ibid. (alteration in original) (quoting State v. Chenique-Puey, 145 N.J. 334, 341 (1996)). "If the evidence would be admissible at both trials, then the trial court may consolidate the charges because 'a defendant will not suffer any more prejudice in a joint trial than he would in separate trials.'" Chenique-Puey, 145 N.J. at 341 (quoting State v. Coruzzi, 189 N.J. Super. 273, 299 (App. Div. 1983)).

> [E]vidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith[,] [but] [s]uch evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, . . . plan, knowledge, [or] identity . . . [if] relevant to a material issue in dispute.
>
> [N.J.R.E. 404(b).]

A-2070-16T2

Thus, we look to Rule 404(b) and apply the Cofield factors. State v. Cofield 127 N.J. 328, 338 (1992). Other crime evidence is admissible under the following circumstances:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [Ibid.]

Defendant argues had the trial judge applied Rule 404(b), the judge would have severed the charges. In defendant's view, evidence of offenses committed against one child were inadmissible character evidence related to the charges against the other child. We disagree.

Here, the charges were offered as similar crimes based on nearly identical facts and involved victims in the same family who were assaulted in similar places[2] at different times. Defendant was Jane's stepfather and Julia's father.

---

[2] The two sets of assaults did occur in different locations, the first, involving Jane, occurred at the shared apartment, and the second, involving Julia, occurred where defendant had moved following the marital separation, which was in the

He was charged with sexually assaulting both victims when they were between the ages of nine and thirteen. Even the alleged pattern of assaults is similar: defendant began by kissing the victims and escalated to physical touching. Each instance was similarly followed by a threat to prevent disclosure. Thus, evidence as to one victim was admissible to prove defendant's identity, plan and intent.

In further support of his position, defendant relies on State v. Williams, 167 N.J. Super. 57, 60 (App. Div. 1979), and State v. Harris, 105 N.J. Super. 319, 322 (App. Div. 1969). His reliance is misplaced. Williams involved charges that could not be joined as a matter of law: certain persons offenses with other substantive crimes. Williams, 167 N.J. Super. at 63. Joinder placed the defendant's prior record before the jury regardless of whether the defendant chose to testify. Id. at 63.

Harris involved two indictments charging ten crimes that were alleged to have been committed over several months, against different victims, and in separate locations. Harris, 105 N.J. Super. at 321. One indictment was related to burglary and theft, while the other involved a string of assaults, batteries and

same house, but a different apartment. We do not consider this to be a crucial distinction.

robberies. Id. at 323. The court held it was manifestly unjust to consolidate the ten counts for trial because the only justification offered was that the same police officer investigated all of the crimes. Ibid.

Here, the commonality between the two offenses is self-evident. The victims are stepsisters and were assaulted by defendant at about the same age. The assaults occurred in defendant's residence and followed the same pattern of touching, escalation, and threats to silence the victims. Thus, joinder was permitted under Rule 3:7-6.

The judge instructed the jury that the charges were related to separate offenses and that they should only consider evidence relevant to the particular charges. Specifically, the court explained:

> There are ten offenses charged in the indictment. The charges are separate offenses by separate counts in the indictment. The defendant is entitled to have his guilt or innocence separately considered on each count by the evidence that is relevant and material to the particular charge based on the law as I will give it to you.

Defendant argues the foregoing model jury charge is insufficient when the jury hears other-bad-act evidence.

> As applied to a jury instruction, plain error requires demonstration of legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by

9

the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.

[State v. Nero, 195 N.J. 397, 407 (2008) (quoting State v. Chapland, 187 N.J. 275, 288-89 (2006)).]

There is no evidence in the record indicating that the jury was distracted or improperly considered any of the evidence provided to them. Indeed, the verdict itself demonstrated the jury considered the two sets of allegations independently.

## II.

We also reject defendant's argument the judge did not adequately consider aggravating and mitigating factors and therefore gave defendant a manifestly excessive sentence. We apply a deferential standard of review with respect to a trial court's sentencing determination, State v. Fuentes, 217 N.J. 57, 70 (2014), and do not substitute our judgment for that of the sentencing court. State v. Lawless, 214 N.J. 594, 606 (2013).

Defendant argues the judge did not explain his rationale for finding aggravating factors two, three, and nine. N.J.S.A. 2C:44-1(a)(2), (3) & (9). Factors three and nine required little explanation, as the incidents in question happened more than once and therefore increased the risk of re-offense and the need for specific and general deterrence. Defendant argues the judge did not

adequately explain his decision with respect to aggravating factor two, harm to the victim. The record supports the existence of factor two. The jury found defendant guilty of sexually assaulting his stepdaughter when she was a young girl.

Defendant also argues mitigating factors seven, no history of criminality, and eleven, excessive hardship, should have been considered. N.J.S.A. 2C:44-1(b)(7), (11). The record reflects that the judge considered defendant's lack of prior convictions. Irrespective of whether the judge chose to apply factor seven, the judge did consider defendant's prior criminal record as "part of the deliberative process." State v. Case, 220 N.J. 49, 64 (2014). With respect to factor eleven, defendant did not show how imprisonment would create an excessive hardship. Accordingly, we discern no error in the sentence imposed. We also conclude that, based on the facts before the court, the application of the guidelines to the facts before us does not shock the judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2070-16T2