# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3708-20

J.C.,

    Plaintiff-Appellant,

v.

D.C.,

    Defendant-Respondent.

_____

Argued September 28, 2022 – Decided October 5, 2022

Before Judges Whipple, Mawla and Marczyk.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-2585-21.

J.C., appellant, argued the cause pro se.

Dwyer, Bachman, Newman & Solop, attorneys for respondent (Elliot S. Solop, of counsel and on the brief; Lauren Conway, on the brief).

PER CURIAM

Plaintiff J.C.[1] appeals from a July 23, 2021 order dismissing her complaint against defendant D.C. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. We affirm in part, and reverse and remand for further proceedings consistent with this opinion.

In 2019, the parties were divorced following a nearly nine-year marriage, which produced one child, A.C. A few days after the divorce, the parties consented to entry of a "Permanent Civil Restraining Order[,]" which permanently barred defendant from being within 1,000 feet of plaintiff's residence and place of business, and barred him from living within fifteen miles of plaintiff's residence for a period of two years. Notwithstanding the divorce, the parties have continued to experience conflicts concerning custody and parenting time issues.

On March 23, 2021, plaintiff filed a domestic violence complaint alleging two predicate acts of harassment. She claimed

> [A.C.] arrived home after visiting with [defendant]. The child disclosed to [plaintiff] that [defendant] had said . . . , "he was going to hurt [plaintiff] and [plaintiff's boyfriend[2]], poison the dogs, drown [plaintiff] and rip the child's teddy apart and lock him

---

[1] We use initials to protect the parties' privacy and the confidentiality of these proceedings. R. 1:38-3(d)(9).

[2] Plaintiff was subsequently married in June 2021.

in a dark room." [Plaintiff] also testified that a few weeks prior to this incident [defendant] stated to her via telephone conversation "the current civil restraints they have in place do not mean dick to him and . . . police would not help her . . . ."

Plaintiff's complaint also contained a lengthy history of alleged domestic violence, including that defendant: Abused A.C. and the family dog; expressed a desire to punch and stab plaintiff in a private journal; and accused plaintiff's spouse of sexually abusing A.C., and reported the abuse to the Division of Child Protection and Permanency (Division), which was later deemed unfounded.

The initial appearance, following entry of the temporary restraining order (TRO), occurred in April 2021. Plaintiff objected to defendant's request for parenting time and claimed A.C. was distressed, fearful, and wanted no contact with defendant. A judge, different from the trial judge, noted plaintiff never contacted the Division despite her allegations of abuse, and ordered A.C. undergo a "psychiatric evaluation to determine whether . . . [A.C.] has some real fear." Plaintiff claimed the Division wanted defendant to undergo an evaluation as well. Defendant consented "as long as he g[ot] parenting time with . . . [A.C.]." The judge ordered both parties and A.C. to undergo an evaluation.

The matter was transferred to the trial judge, who held a hearing a few weeks later. Although the evaluation had not taken place, the judge entered an

amended TRO granting defendant parenting time and scheduled a hearing for May 2021. The amended TRO also reflected the court-ordered evaluation and further permitted the parties to seek their own evaluations.

The court-ordered evaluation was provided to the parties under a protective order on July 19, 2021. The domestic violence trial occurred on July 23, 2021. Plaintiff testified and called five witnesses, including her spouse, mother, sister, A.C.'s teacher, and defendant.

Plaintiff explained the predicate acts occurred following a failed mediation. She told defendant she could not pick up A.C. due to work obligations and wanted defendant to bring A.C. back to her one day early. Defendant became upset and plaintiff texted him that she "was not going to drop [A.C.] off because [she] could not get [A.C.] back home." According to plaintiff, defendant then called her and said: "You're going to drop [A.C.] off. It's not up for debate. . . . I will come into your house, and I'm going to drag [A.C.] outside. . . . I will come and rip him out of the house." Plaintiff responded defendant could not come to her home due to the civil restraints and defendant allegedly replied "your civil restraints don't mean dick to me. Obviously, the police are not going to help you."

Plaintiff testified the second predicate act happened a few weeks after the first. She claimed, A.C. said:

> [M]y father's going to shoot our dogs. He says he's going to poison and shoot them in the woods. He told me he's going to get rid of [plaintiff] and dump [her] on a garbage barge. He is going to get rid of [plaintiff's spouse], and he is going to . . . kill me and put me in a garbage can. He said . . . he wants me to wait until I'm older so that I know what the pain feels like, because he's very, very mad, and that he said I'm afraid he's going to kill us.

Plaintiff claimed A.C. allegedly repeated the statements to his teacher and his therapist, who indicated she was required to report the matter to the Division. Plaintiff testified she complained to the Division and was advised to obtain a restraining order "because it's he said, she said, and . . . they don't have enough hard evidence to say that it did or did not happen one way or another, and . . . [A.C.] seems to have what [the Division] called interview fatigue, and they didn't want to keep going."

Plaintiff's testimony also recounted the alleged history of domestic violence in detail. Plaintiff's spouse corroborated her testimony regarding the predicate acts and other facts not relevant to the claims of domestic violence. The teacher testified that on March 22, 2021, A.C. told her "[defendant] had said he was going to tie [plaintiff] up, put her on a barge and drown her" and would

5

shoot the family dogs. When she informed plaintiff what A.C. said, plaintiff "was very upset, and . . . scared[.]"

The testimony from plaintiff's mother and sister was confined to the alleged history of domestic violence. Defendant's testimony in plaintiff's case in chief involved the alleged history of domestic violence and her allegations of child abuse. Regarding the predicate acts, defendant acknowledged he "may have" said he was "going to come and rip [A.C.] out of [the] home," but it was "a heat-of-the-moment kind of reaction, because [he] was upset at [plaintiff] withholding [A.C.] from [him] . . . ." He did not recall telling plaintiff her "civil restraints don't mean dick" or that police would not help her.

Prior to resting, plaintiff asked the trial judge to adjudicate her request to hold a hearing to determine A.C.'s competency to testify. The judge denied the request, stating:

> I am not allowing you to bring a five-year-old in to testify as a witness in this case. . . . He's six now, I understand that. At the time of the[] alleged statements, he was five years old.
>
> . . . .
>
> And while I recognize that you believe that he's a very smart, intelligent, advanced little boy, he has a difficulty with telling right from wrong. And we know that. We know that from [the Division proceeding] in which you allowed me to question by consent of all

6

parties during the pendency of this FV matter. We know this from statements made by practically everyone, including yourself, to [the psychiatric evaluator] that he sometimes has trouble. So, no, I'm not going to subject this little boy to any more trauma.

Plaintiff rested, and then defendant rested without calling witnesses.

The trial judge found plaintiff's testimony regarding the alleged history of domestic violence not credible. The judge noted that throughout the trial plaintiff at times became upset but "could turn it on and off relatively easy." Further, plaintiff was "very specific" when testifying on direct but evasive when questioned by defense counsel.

Regarding the predicate act related to threats A.C. heard defendant say, the judge reiterated A.C. "can't tell right from wrong and he changes his story repeatedly." She noted the Division stated "it appears [A.C.]'s been coached." The judge found defendant's testimony credible that the statement A.C. heard was not "said to purposefully harass, alarm [plaintiff] or anything else, but was said in an argument between the [parties] that [they] both admitted to." For these reasons and because the statement could not be verified other than through A.C.'s testimony, the judge dismissed this predicate act.

Regarding the second predicate act, the judge noted plaintiff did not claim she was fearful when recounting defendant's statement that he was going to rip

A-3708-20

A.C. out of the home. Although defendant had anger issues, the judge "d[id] not believe, based on the testimony by both [parties], together with all the supporting documentation," the predicate act was established.

Near the end of the hearing, plaintiff asked whether the psychiatric evaluation remained under protective order. The trial judge responded, the report "didn't form the basis for . . . [the] opinion today." Rather, she understood the evaluation "would help going forward in [the parties'] relationship . . . ." The judge dismissed plaintiff's complaint.

Plaintiff raises the following points on appeal:

POINT I

THE CHANCERY COURT ERRED IN ORDERING PLAINTIFF TO UNDERGO A PSYCHOLOGICAL EVALUATION DURING AN "FV" OR DOMESTIC VIOLENCE RESTRAINING ORDER MATTER WITHOUT PROPER JURISDICTION TO DO SO.

POINT II

THE CHANCERY COURT ERRED IN ALLOWING [THE EXPERT] TO OPINE ON PARENTAL FITNESS, ALIENATION AND OTHER CUSTODY TYPE MATTERS AFTER HER EVALUATIONS WERE COMPLETED WITHOUT APPRISING PLAINTIFF THAT THIS WAS PART OF THE EVALUATION.

POINT III

A-3708-20

THE CHANCERY COURT ERRED READING, USING, REFERENCING AND RELYING UPON THE REPORT OF [THE EXPERT] DURING A DOMESTIC VIOLENCE RESTRAINING ORDER HEARING AND WAS PALPABLY PREJUDICED BY SAME.

POINT IV

THE CHANCERY COURT ERRED IN REFUSING TO CONDUCT A COMPETENCY HEARING ON WHETHER THE MINOR CHILD WOULD BE ALLOWED TO TESTIFY.

The fact-findings of a family court are accorded special deference so long as they are supported by "adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Deference is especially appropriate because the Family Part has "special jurisdiction and expertise in family matters." Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare, 154 N.J. at 413). "Because a trial court '"hears the case, sees and observes the witnesses, [and] hears them testify," it has a better perspective than a reviewing court in evaluating the veracity of witnesses.'" Cesare, 154 N.J. at 412 (alteration in original) (quoting Pascale v. Pascale, 113 N.J. 20, 33 (1988)). Courts should interfere "[o]nly when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark'" to "ensure that there is not a denial of justice." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J.

Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007)).  However, a reviewing court owes "no deference to the judge's decision on an issue of law or the legal consequences that flow from established facts."  Dever v. Howell, 456 N.J. Super. 300, 309 (App. Div. 2018); see also Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We reject the arguments raised in plaintiff's Points I, II, and III.  The trial judge did not order the evaluation and its purpose was to address the parties' parenting time dispute.  Moreover, plaintiff did not object when the court announced she would be evaluated.  Where a party fails "to object to an error or omission . . . we review for plain error" and "disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'"  State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2).  Excluding the issue of A.C.'s competency to testify, none of the trial judge's findings relied upon the evaluation, and instead were predicated on the trial testimony and evidence.

Point IV of plaintiff's brief raises the matter of the trial judge's refusal to let A.C. testify.  This testimony would purportedly help plaintiff prove defendant intended to harass her by making alarming statements to A.C.

The catchall provision of N.J.S.A. 2C:33-4(a), states a person commits the offense of harassment if they "[m]ake[], or cause[] to be made, one or more communications . . . [in] any other manner likely to cause annoyance or alarm . . . ." Our Supreme Court has stated "a purpose to harass may be inferred from the evidence presented." State v. Hoffman, 149 N.J. 564, 577 (1997). "The catchall provision of N.J.S.A. 2C:33-4(a) should generally be interpreted to apply to modes of communicative harassment that intrude into an individual's 'legitimate expectation of privacy.' . . . Thus, in enforcing subsection (a) of the harassment statute, we must focus on the mode of speech employed." Id. at 583 (citation omitted) (emphasis added); see also E.K. v. G.K., 241 N.J. Super. 567, 570 (App. Div. 1990) (holding no intent to harass could be inferred where the defendant physically disciplined the parties' child and the abuse adversely impacted plaintiff, and even if the defendant purposely harmed the child, the conduct would not establish a purpose to harm the plaintiff).

N.J.R.E. 601 provides:

> Every person is competent to be a witness unless (a) the court finds that the proposed witness is incapable of expression so as to be understood by the court . . . , or (b) the proposed witness is incapable of understanding the duty of a witness to tell the truth, or (c) as otherwise provided by the[ evidence] rules or by law.

A-3708-20

A trial court has discretion to determine a witness's competency to testify. State v. G.C., 188 N.J. 118, 132 (2006). This standard also applies when the proposed witness is a minor. Ibid. As part of its competency analysis, the trial court must "determine whether the child witness appreciates the distinction between truth and lies, and comprehends his or her duty to tell the truth." State v. Bueso, 225 N.J. 193, 207 (2016); see also G.C., 188 N.J. at 132.

There is no per se age-based bar regarding competency to testify. See Bueso, 225 N.J. at 213-14 (permitting a seven-year-old child to testify); G.C., 188 N.J. at 132-33 (permitting a five-year-old child to testify); State v. R.W., 104 N.J. 14, 22-23, 27-28 (1986) (noting a three-year-old child's age could not per se form the basis of subjecting the child to an otherwise unwarranted psychological evaluation before permitting the child to testify).

In the context of a custody dispute, we have stated:

> The age of the child certainly affects the quantum of weight that his or her preference should be accorded, but unless the trial judge expressly finds as a result of its interview either that the child lacks capacity to form an intelligent preference or that the child does not wish to express a preference, the child should be afforded the opportunity to make her views known. We would think that any child of school age,[3] absent the express findings we have indicated, should have that

---

[3] Beginning at six years of age children are required to attend school by State law. N.J.S.A. 18A:38-28 to -31.

> opportunity and that the judge would be assisted thereby.
>
> [Lavene v. Lavene, 148 N.J. Super. 267, 272 (App. Div. 1977).]

There is arguably the same, if not more at stake, in a domestic violence proceeding as in a custody or criminal proceeding. A.C. was six years old at the time of the hearing and the alleged incident occurred when he was five years old. The judge found A.C. "has a difficulty with telling right from wrong[,]" basing this finding on the psychiatric evaluation and the Division proceeding "in which [the parties] allowed [the court] to question [A.C.] by consent of all parties during the pendency of th[e instant] matter." However, the appellate record lacks detailed findings and any information about the Division proceeding or the psychiatric evaluation to provide us the necessary context to understand the judge's ruling. Neither the Division records nor the evaluation were put into evidence.

The Division's assertion that A.C. appeared to be coached was the Division's conclusion. We do not know whether or why the judge reached the same conclusion because judge's findings do not further elucidate this issue or her other competency-related findings. A.C.'s role in proving defendant intended to harass her by delivering statements through A.C. was central to this

portion of plaintiff's case. Therefore, more robust findings by the trial judge regarding A.C.'s competency were required. "Our law is particularly solicitous of victims of domestic violence, and the [PDVA] therefore influences our interpretation of the harassment statute." Hoffman, 149 N.J. at 584. For these reasons, we return the matter to the trial judge for further findings on this issue.

We add that our decision must not be construed as a directive to have the child testify. Rather, the purpose of the remand is for the judge to explain her decision regarding the competency issue. If necessary, the judge may interview the child and if the judge intends to rely upon the psychiatric evaluation, absent an agreement by the parties otherwise, due process requires a hearing to adduce testimony from the evaluator on the competency issue before the judge decides whether A.C. is capable of testifying.[4] Excepting the competency issue, the judge's findings are affirmed in all other respects.

Affirmed in part, and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] Naturally, if the judge concludes A.C. is competent to testify, she should re-try the case with respect to the allegation of harassment conveyed by defendant through the child. If a re-trial occurs, it is axiomatic that the judge has ultimate control over the mode of interrogation of the child. N.J.R.E. 611(a).